## SOPHIA A. BOSTWICK *et al.*

### *v.*

## MARK SKINNER *et al.*

1. COUNTY COURTS—*not courts of inferior or special jurisdiction.* County courts, although of limited, are not, strictly speaking, of inferior, and certainly are not courts of special jurisdiction, and when adjudicating upon the class of questions over which they have general jurisdiction, as liberal intendments will be granted in their favor as would be extended to the proceedings of the circuit courts.

2. SAME—*presumption in favor of their finding, on petition by administrator to sell real estate.* Where a petition is filed in the county court by one claiming to be an administrator, for leave to sell real estate to pay debts of the deceased, one of the questions presented for the adjudication of the court is, whether the petitioner is administrator, and if the court decrees in accordance with the prayer of the petition, the presumption is that the proof was sufficient.

3. SAME—*when and how jurisdiction of sale of land of deceased parties to pay debts acquired.* County courts acquire jurisdiction in a proceeding by an administrator to sell lands to pay debts, from the death of the party seized of the real estate, the grant of letters of administration, and his indebtedness, and filing a petition showing these facts; and the recitals of the record can not, in a collateral proceeding, be contradicted by parol or other evidence outside of the record.

4. County courts having jurisdiction over estates in general, the question as to whether a particular county court has jurisdiction of a particular estate is a question of fact to be determined by that court, and when once determined, the judgment is conclusive, and can not be questioned in a collateral proceeding.

5. ADMINISTRATOR'S SALE OF REAL ESTATE — *prerequisites to filing petition to sell land.* Where an order for the sale of real estate by an administrator recites that he has applied the proceeds of all the personal property which came into his possession to the payment of debts of the deceased, and that there is a large amount of such debts still unsatisfied, for the payment of which there are no assets in his hands, and also recites that the administrator filed an inventory and appraisement of the estate, which were canceled, so far as they related to goods and chattels, for the reason that such goods and chattels never came into the possession of such administrator, for which reason no sale bill could be rendered, etc., it was *held*, that such recital obviated the objection that there was no inventory, appraisement bill and sale bill filed before filing the petition for sale of real estate.

6. DECREE OF FORECLOSURE — *when binding, on failure to redeem.* A decree of foreclosure of a mortgage, if it is of such force as to be taken advantage of by the defendants as an estoppel against the complainants denying their title, in case they chose to redeem from sale under it, is binding on them in case they fail to redeem.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

Mr. EDWARD ROBY, for the appellants.

Messrs. AYER & KALES, Messrs. ISHAM & LINCOLN, Mr. EDWARD MARTIN, Messrs. MONTGOMERY & WATERMAN, Mr. LYMAN TRUMBULL, Mr. JOHN BORDEN, and Messrs. BENNETT, KRETZINGER & VEEDER, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a bill in equity, filed by appellants in the court below, against appellees, and several other parties as to whom it was dismissed on the filing of answers, praying to be allowed to redeem from a certain mortgage and for other relief.

The mortgage is upon lands, now estimated to be very valuable, in Cook county, in the immediate vicinity of the city of Chicago, and was executed by appellants' ancestor, John Bostwick, on the 1st day of May, 1855, to the appellee Mark Skinner, to secure the payment of $19,000, and accruing interest. Answers were filed by appellees, as also cross-bills, praying the removal of a cloud cast upon their titles by appellants and their solicitors. The cause was heard on bill, answers, cross-bills and answers thereto, and evidence, and the court thereupon decreed in favor of appellees, denying the prayer of appellants' bill, and granting the relief prayed by the cross-bills.

Appellees deny that appellants' ancestor, John Bostwick, through whom alone they make claim, ever had, in equity, any interest in the lands, and assert that his purchase, or attempt to purchase, was made as the agent and trustee of the appellee John M. Krum; that Krum furnished all the money that ever was paid by Bostwick for the land, under his contract to purchase; and that if any deed was ever, in fact delivered to Bost-

wick for the land, vesting in him the legal title, such deed was so made and delivered in violation of his agreement with Krum, and that he, consequently, had but the naked legal title, which he and those claiming under him are, in equity, chargeable as holding in trust for Krum. We incline to the opinion that a fair preponderance of the evidence would justify this conclusion. It is quite clear that Bostwick had no money of his own, and no credit; that when he purchased the property in controversy, he had no source from which to obtain the money for its payment, except the promise of Krum to advance the amount; and Krum's version, that he agreed to buy the property for him, as an indemnity for previous losses, and that the money paid on the contract of purchase was advanced by him on the faith of that agreement, is not successfully impeached or overcome by other evidence.

But, aside from this view of the case, we are of the opinion that whatever interest appellants may have had in the lands was disposed of by the sale of the administrator of Bostwick's estate, and the deed made pursuant thereto, and we shall, therefore, restrict our remarks to this branch of the case.

That Bostwick died intestate in Cook county, and that all the property administered was there situated, is conceded; but appellants insist that his actual place of residence was Upper Alton, in Madison county, and that, therefore, the Cook county court had no jurisdiction over his estate, and all orders made by it appointing an administrator and directing a sale of the lands for the payment of debts, etc., were absolutely void.

The record shows, that on 17th day of November, 1855, Benjamin F. Downing presented his petition, in writing, to the Cook county court, wherein he recited "that John Bostwick, late of Cook county, died in Chicago on or about the 12th day of September, 1855, leaving property and effects" in that county, "but leaving no last will or testament, as far as known or believed" by the petitioner; that said property and effects consisted of land in the county, worth about $500; that said deceased left a widow and two or three children, who reside at Alton, Ill.; that the petitioner was a creditor of said estate to

150      BOSTWICK *et al.* *v.* SKINNER *et al.*     [Sept. T.

Opinion of the Court.

the amount of $50, for board—and the petitioner, therefore, prayed that the administration of the estate of the said John Bostwick, deceased, might be granted to him. This was subscribed and sworn to by Downing.

The court, on the same day, made the following order:

" This day comes into court Benjamin F. Downing, and makes application for administration of the estate of John Bostwick, deceased.

" And it appearing to the court, by satisfactory proof, that John Bostwick, late of Cook county, died in said county on or about the 12th day of September, A. D. 1855, leaving property and effects in this county, but leaving no last will and testament;

" And it appearing to the court that said Benjamin F. Downing is a creditor of said deceased, and by law entitled to administration of the effects whereof he died possessed, it is

" *Ordered*, that administration of the estate of said John Bostwick be granted to said Benjamin F. Downing, upon his entering into bond in the penal sum of $1000, payable and conditioned as the law directs.

" And the said Benjamin F. Downing, having produced the bond, with Paul Cornell and Lewis W. Stone as his securities, which is approved by the court, and taken the oath of office as such administrator, it is

" *Ordered*, that letters of administration issue to him accordingly."

Passing over the intermediate steps in the administration of the estate, all of which are set out in full in the record, we find that, at the March term, 1856, the administrator having previously given proper notice by publication, presented to the Cook county court his petition, in writing, praying for a sale of so much of the real estate of which the intestate was seized and possessed at the time of his death as should be sufficient to pay the debts due from the estate.

The petition contains an allegation that the petitioner " is the legal administrator of the estate of John Bostwick, deceased, late of Cook county."

A guardian *ad litem* was appointed, who answered for the defendants, requiring full proof to be made of the allegations in the petition.

The court decreed a sale of the lands in conformity with the prayer of the petition.

The question is, can appellants, in this collateral proceeding, go behind these orders of the Cook county court, and inquire into their correctness?

Upon their face they show that the court had jurisdiction, and unless it is now competent to raise an issue of fact to test their verity, they are conclusive. To hold that this may be done, especially after the lapse of so many years, would, obviously, be fraught with great evil, in view of the commercial character which custom has, in this country, affixed to lands, and the frequent and great fluctuations in value to which they are incident. In many cases, by reason of the deceased having had more than one domicile, occupied alternately, as pleasure or convenience dictated, or by reason of a change in domicile being in process of consummation at the time of death, it may be a question of much perplexity to determine with entire accuracy what was the actual domicile; and if the question, however deliberately passed upon by the county court, is to be considered as always open to proof whenever any one may choose to raise it in a collateral proceeding, it is fair to presume that different results might be reached by different tribunals, or even by the same tribunal, at different times, varying in each case to conform to the preponderance of proof then produced. A fact which may, when the decree for the sale of this property was rendered, have been demonstrably proved, may now be unsusceptible of satisfactory proof, in consequence of the death or absence of witnesses, or even the loss of memory of witnesses. If titles to be derived at administrator's sale should be held subject to this element of insecurity, in addition to such as have heretofore been recognized, few men of prudence could be found to invest in them, unless at prices ruinous to estates. Such a construction, manifestly, could only be justified by the strict letter of the law.

152        BOSTWICK *et al.* *v.* SKINNER *et al.*        [Sept. T.

Opinion of the Court.

We do not consider it indispensable to the present case, that we shall determine whether the county court, in granting the .letters of administration, acted judicially or only ministerially, since, when the decree was passed for the sale of the lands, it was unquestionably acting judicially, and the question of jurisdiction, both over the person and the thing, was then determined.

The construction given, in argument, in *Propst* v. *Meadows*, 13 Ill. 157, to the law creating the county court, in respect to its relative rank, has been too long adhered to to be now questioned. It has been referred to with approval in many subsequent cases, and, so far as we now recall the decisions of this court, never questioned. Upon the faith of its correctness, property rights have been acquired which it would be grossly unjust to disturb, even if we were fully convinced, as the counsel contends, that it originated in a total misapprehension of principle.

Accepting, then, as not to be questioned, as there said, that " the county court, although of limited, is not, strictly speaking, of inferior, and certainly is not a court of special jurisdiction," and that, " when it is adjudicating upon the class of questions over which it has general jurisdiction, as liberal intendments will be granted in its favor as would be extended to the proceedings of the circuit court," it would seem to follow, this record, when considered in this collateral way, is conclusive. There is nothing in the record to disprove jurisdiction. Whether the petitioner was administrator, was one of the questions to be determined by the court, and, the court having decreed in accordance with the prayer of the petition, the presumption is, that the proof was sufficient.

In *Botsford* v. *O'Conner et al.* 57 Ill. 77, in determining the sufficiency of the record in respect of the jurisdiction of the court over the defendant, in a proceeding by an administrator, in the county court, to sell lands to pay debts, it was held, the court acquired jurisdiction of the case from the death of the party seized of real estate, the grant of letters testamentary or of administration, and his indebtedness, and filing

a petition showing these facts; and that the recitals of the record could not, in a collateral proceeding, be contradicted by parol or other evidence outside the record. The county court of Cook county having jurisdiction over estates in general, whether this particular estate was within its control, depended upon facts to be proved. Admitting that, if the question were presented in a direct proceeding, that court would have had no jurisdiction over the estate, it would have been not because the court had no authority to grant administration, but because the evidence showed that, although the deceased died within the jurisdiction of the court, his actual domicile was elsewhere. We concur with the editors of Smith's Leading Cases (7th Am. Ed.), vol. 1, part 2, p. 1106, that "there is nothing absurd or illogical in holding that a body of limited powers may determine whether the questions which are brought before it admit of the exercise of its powers. If limitation of power necessarily excluded the right of ultimate decision, nothing could be decided finally under governments which, like those of this country, are, throughout and without exception, limited." The important inquiry in such cases is well stated by Mr. Justice ALLEN, in *Cox* v. *Thomas*, 9 Grattan, 323, quoted by the same authority, thus: "The only question would seem to be, whether the subject matter was within the jurisdiction of the court; if it was, if the jurisdiction of the court extended over that class of cases, it was the province of the court to determine for itself whether the particular case was one within its jurisdiction."

A reference to a few of the decisions of this court, where the question has been, to some extent, considered, will show that it is perfectly consistent for us to hold that the record of the county court is conclusive on the question of the domicile of the deceased, when questioned collaterally.

*Young et al.* v. *Lorain et al.* 11 Ill. 624, was ejectment. The defendant claimed under the sale of a guardian, made pursuant to a decree of the circuit court. Objection was taken to the appointment of the guardian, which was not considered tenable, and also to the regularity of the proceedings of the

circuit court in ordering the sale. It was said, the authorities were all agreed, in such cases, that, where enough appeared upon the face of the proceedings to call upon the court to proceed to act, the court has properly acquired jurisdiction; and it was added: "Where the jurisdiction is thus established, and the court is authorized to hear, it follows, as a necessary consequence, that it is authorized to adjudge, and that judgment being thus entered by authority of law, no matter how erroneous it may be, or even absurd—though it may be made in palpable violation of the law itself, and manifestly against the evidence—is, nevertheless, binding upon all whom the law says shall be bound by it, that is upon all parties and privies to it, until it is reversed in a regular proceeding for that purpose."

In *Fitzgibbon* v. *Lake*, 29 Ill. 165, ejectment was brought for certain lands, and the defendant claimed under a guardian's sale. One of the objections made to the record of the guardian's sale was, that the petitioner was not guardian, and had no authority to institute the proceedings, but the court said: "Whether the petitioner was the guardian, and had authority to institute the proceeding, was for that court to determine when it heard the petition. It decided he was, by granting the order, and we can not reverse that decision here."

In *Schnell* v. *The City of Chicago*, 38 Ill. 384, a bill in chancery was filed to enjoin the prosecution of an action of ejectment. The complainants claimed under an administrator's sale and deed, and the question was raised, whether the public administrator, by whom the sale and conveyance were made, was lawfully appointed and empowered to act in that particular case. The court modified what had been said in *Langworthy* v. *Baker, Admr.* 23 Ill. 484, saying: "It, perhaps, was going too far, in the case cited from 23 Ill., to say the entire proceedings were void, for it was sufficient to say in the case, it being a direct proceeding to reverse the action of the county court, that the action of that court was not in conformity with the statute. This would have been sufficient to justify the court in the conclusion to which it arrived, on the

merits of the whole case. Here, in this proceeding the court must intend, an occasion had arisen or extraordinary circumstances required the appointment of this administrator;" and it was held, notwithstanding it appeared on the face of the record that the public administrator had applied for and obtained letters of administration before the expiration of the time within which the widow and heirs were allowed to administer, that the grant of administration was not void, and that it would be presumed the court heard sufficient proof to justify its action, which had not been preserved, although conceding that, on appeal or writ of error, the grant of administration would have been held irregular, and set aside.

The case of *Wight* v. *Wallbaum et al.* 39 Ill. 554, was ejectment, the plaintiff claiming as heir and devisee of John F. Wight, the original owner in fee of the property, who died testate at Erie, Pa. The defendants claimed under a judgment rendered against John F. Wight, in his lifetime, and execution issued thereon and sale subsequent to his death, and also as purchasers at an administrator's sale. Wight, by his will, nominated certain parties his executors, all whom but one, Jabez Wight, renounced the executorship, whereupon letters testamentary were issued to him by the proper authorities of Erie county, Pa. Subsequently, properly authenticated copies of the will, and probate of it in Pennsylvania, were filed by J. F. Russell in the Cook county court, and he was by that court appointed administrator, with the will annexed, in the State of Illinois, and qualified as such. Russell thereupon, as such administrator, obtained an order of the county court, and sold the property. The objection was argued, that the county court failed to observe the requirements of the law in granting letters of administration, with the will annexed, to Russell, but the court disallowed it, observing: "The probate court had jurisdiction of the subject matter and of the person, and thereby became fully empowered to act by refusing or granting such letters. When they were granted, Russell thereby became, at the least, an administrator *de facto*, and, being such, the regularity of his appointment can not be questioned

in a collateral proceeding. On an application to revoke the letters, over an appeal from the order granting the letters, all of the objections urged against their validity would be properly considered. But they can not be, in a collateral proceeding.

In *Duffin et al.* v. *Abbott et al.* 48 Ill. 18, one question was, whether the appointment of an administrator *de bonis non* can be attacked collaterally, and it was held that it could not, upon the authority of *Wight* v. *Wallbaum, supra.*

In *Shephard* v. *Rhodes et al.* 60 Ill. 301, the facts were, the deceased died in Pennsylvania, leaving a will, and having property and creditors in this State. Letters of administration were granted in this State without it being known that there was a will, but, on its discovery, it was probated and recorded, and the letters of administration were revoked, and letters, with the will annexed, were granted to another person. It was held the grant of the first letters was not void, but voidable only, and the acts performed by the first administrator were binding in a collateral proceeding.

The counsel for appellants argues that, between all these cases and the one before us, there is this vital distinction: In them, the court was authorized to act and appoint some one, while here the court was not authorized to act at all. In our opinion, this is more specious than solid. Whether, in any case, the county court is authorized to appoint an administrator, it being conceded there is an estate upon which to grant administration, depends upon proof of those things which the law requires to exist before the court is authorized to act. If certain facts exist, this particular court can appoint an administrator. If certain other facts exist, this particular person may be appointed administrator. A court has no more jurisdiction, for the purpose of appointing an administrator, where the deceased left a will, naming an executor who is willing to qualify, than where the domicile of the deceased was in a remote county; nor has the court any more authority to appoint a stranger to the estate, administrator, except upon the contingencies provided by the statute, than it has to appoint an

administrator to act in a foreign jurisdiction. But the court has jurisdiction over the question of the appointment of administrators, and the decreeing of the sale of lands on their petition, for the payment of debts, generally, within the county. And it acquires jurisdiction to determine what shall be done, in each particular case, when a person claiming the right to invoke its action, having previously given such notice as the law requires to those interested in the estate, presents the case. Whether the question, then, be that of the domicile of the deceased, or the relationship of the party claiming the right to act as administrator, or whether the estate was testate or intestate, or was indebted, it is to be determined by that court before it acts; and when it does determine and act by ordering the sale of property belonging to the estate, its determination is judicial, and until reversed by some direct proceeding, is presumed to have been sustained by sufficient evidence.

The case would be quite different if the record itself disclosed that the intestate did not reside in Cook county, prior to his death, or if the court could take judicial cognizance of the actual domicile of parties, without proof.

Another objection urged by appellants against the administrator's sale is, that it does not appear that the administrator had, previous to filing his petition, filed an inventory, appraisement bill and sale bill, and applied the personal estate to the payment of the debts.

It is stated in the petition that there are claims against the estate to the amount of $180.05, which have been allowed by the county court; that there has never been in the possession of the administrator any personal estate of the deceased, which could be rendered available as assets, and that he has no assets to pay said claims. The decree recites that the administrator filed an inventory and appraisement of the estate of the deceased, "which inventory and appraisement were canceled so far as they related to goods and chattels, as said goods and chattels never came into the hands or possession of said administrator, for which reason no sale could be had or sale bill

rendered of said goods and chattels." And also that the "administrator has applied the proceeds of all the personal property of said deceased, which has come into his possession, to the payment of debts due by said deceased; and that there is a large amount of such debts still unsatisfied, for the payment of which there are no assets in the hands of said administrator."

This would seem to be sufficient. If there was nothing to inventory or sell, there could be no inventory or sale bill, and the finding of the indebtedness is distinct and full enough for all practical purposes. *Bree et al.* v. *Bree*, 51 Ill. 367; *Madden* v. *Cooper*, 47 id. 359; *Shoemate* v. *Lockridge, Admr.* 53 id. 503.

The fact that appellants were not named in the notice published by the administrator .for the purpose of obtaining the decree authorizing him to sell the property, is not urged as ground of objection to the decree, nor could it be. Under the statute then in force, it was not essential that the names of the heirs should be given in the notice. *Gibson* v. *Roll*, 27 Ill. 88; *Stow* v. *Kimball*, 28 id. 93; *Morris* v. *Hogle*, 37 id. 155.

With regard to the fraud charged in the administration of the estate, it is sufficient to say there is no evidence thereof by which those claiming under the purchase at the administrator's sale can be affected, even if we were to concede, which we do not, that it is clearly proved that the administrator's conduct was fraudulent.

There remains but a single additional objection, relating to the title derived at the administrator's sale, which we deem it necessary to notice.

The appellee Paul Cornell purchased and received the administrator's deed for the south-west quarter of section 14, the remainder of the property being purchased by and conveyed to the appellee Ralston B. Palmer. Subsequently, the appellee Mark Skinner filed his bill to foreclose his mortgage, in the Cook County Court of Common Pleas, making the administrator, widow, and all the heirs of Bostwick, defendants, except Mary A. Dunn and Laura A. Leeber, who were omitted. De-

cree of foreclosure was rendered and the property directed to be sold by the master in chancery, which was done. At this sale, the appellees Paul Cornell and John M. Krum became the purchasers of the property.

It is objected that the appellees Paul Cornell and Mark Skinner, and those in privity with them, are therefore estopped to claim title under the administrator's sale, because, it is said, Cornell was the solicitor of Skinner in filing the bill to foreclose, and that the institution of the suit was a solemn avowal that the equity of redemption to be foreclosed was then in the defendants, to which Cornell and Krum made themselves parties by purchasing under the decree.

The record does not support the assertion that Cornell was Skinner's solicitor, although we do not attach any importance to the fact.

If the defendants to the bill of foreclosure had redeemed under the decree, it might be they would be entitled to invoke its protection. But they did not, and if it was obligatory upon them, so as to be binding for any purpose as an estoppel, they are concluded by it. As to the two heirs, Mary A. Dunn and Laura A. Leeber, who were not parties to the bill, and therefore are not bound by the decree, we think it clear they can not set it up as an estoppel. Bigelow on Estoppel (1st Ed.), 46–7, 67–8; 1 Greenleaf's Evidence, 524. And those who claim in right of them occupy no better position.

Entertaining the views we have expressed, our opinion must be that the decree below should be affirmed, which is accordingly done.

*Decree affirmed.*