# RICHMOND AND DANVILLE RAILROAD CO.
### *v.*
# GORMAN.

FOREIGN JUDGMENTS, COLLATERAL ATTACK UPON; ADMINIS-
TRATION.

1. Where to an action by an administrator here against a railroad
   company for the negligent killing of his decedent in North Car-
   olina, the defence was the settlement of the claim by payment
   to an administrator of decedent's estate appointed in that State, it
   was *held*, reversing the judgment below for plaintiff, that
   although the appointing power there may have erred in de-
   termining that decedent was domiciled in that State at the time
   of his death as required by law, the grant of administration in
   that State was not the subject of collateral attack in a proceed-
   .ing here.
2. In such a case, a judgment entered in a competent court in North
   Carolina, by consent, in favor of the administrator there and
   against the railroad, cannot, if valid and binding on its face, be
   successfully attacked for fraud in a collateral proceeding here.

No. 377. Submitted May 8, 1895. Decided October 8, 1895.

HEARING on an appeal by the defendant from a judgmant
on verdict in an action by an administrator to recover dam-
ages for the alleged negligent killing of his decedent. *Re-
versed.* ·

The Court in its opinion stated the case as follows :

This is an appeal from a judgment in an action for dam-
ages for personal injuries. Plaintiff's intestate, Samuel E.
Gorman, deceased, was a journeyman plumber, and for about
one year, immediately before his death, had been at work
for wages in the city of Asheville, county of Buncombe,
State of North Carolina ; but his home was in the city of
Washington, D. C., where he left his wife and three minor
children. Having paid a visit to his family, he was on his
way back to Asheville, when, on August 27, 1891, he took
passage on a train on the Western North Carolina Rail-

road, which was then operated by the defendant, the Richmond and Danville Railroad Company. Through negligence the train was derailed at a point in Iredell County, North Carolina, and said Gorman was killed in the wreck that ensued. September 7, 1891, the plaintiff, Edward Gorman, was duly appointed administrator of intestate's estate by the Orphans' Court of the District of Columbia, and this suit was commenced by him October 15 following.

In bar of the action, defendant pleaded the following proceedings in the courts of the State of North Carolina, and settlement thereunder :

1. The grant of letters of administration upon intestate's estate to one J. C. Brown on September 30, 1891, by the clerk of the superior court of Buncombe County, North Carolina.

2. The record of a suit by said Brown, as administrator, against the defendant, in the superior court of Buncombe County, for the negligent killing of intestate under the statute of said State conferring a right of action in such cases, filed November 11, 1891, and afterwards removed to the circuit court of the United States for the Western District of North Carolina, in which court the receivers of the defendant were regularly made parties defendant.

3. An acquittance and discharge of said cause of action executed by said Brown, May 1, 1893, as administrator, in consideration of the sum of $2,000 recited as paid to him therefor, which was accompanied by a voucher for the payment of said sum of money, showing a receipt thereof on the same day by M. E. Carter, attorney of record in said cause for the plaintiff.

4. A judgment of the United States circuit court, rendered in said cause, May 6, 1893, as follows :

" J. C. Brown, Adm. of Samuel Gorman, decd., plff., *against*
    the Richmond and Danville Railroad Company, deft.

    " The above-entitled action coming on for trial upon the issues raised by the pleadings, and it having been made to appear to the court that the plaintiff and defendant have

compromised and settled all the said issues, including all
differences between them growing out of the matters alleged
in the complaint of plaintiff, and it having been made to
further appear that the damages sustained by plaintiff were
fixed at the sum of two thousand dollars ($2,000), and that
the said sum has been paid this day to the plaintiff in full
satisfaction of his alleged cause of action, it is considered
and adjudged, upon motion of plaintiff's counsel, made in
open court, that the plaintiff do recover of the defendant
the costs of the action, the same to be taxed by the clerk
of this court, and to include the costs of the action in the
superior court of Buncombe County, as therein incurred,
from which court the same was removed to this court, as
provided by law, the said action having been commenced
in the said superior court, it being a State court of North
Carolina, in the county in which letters of administration
were granted plaintiff upon the estate of his intestate, Sam-
uel Gorman, decd., a citizen and resident of the said county
at the time of his death."

Proof was admitted on the part of plaintiff, over defend-
ant's objection, tending to show that no part of this money
had ever been paid to plaintiff or to the family of the intes-
tate ; and that on May 10, 1893, the defendant had been
notified in writing that the plaintiff would not recognize any
settlement that might be made with the North Carolina ad-
ministrator, and would proceed with his suit in this court.
Proof was also offered, over objections, tending to show
that intestate had no property whatever in the State of
North Carolina, save his clothing, which had been sent to,
and received by his wife, immediately after his death. No
evidence was offered by defendant beyond the record afore-
said.

The several provisions of the code of North Carolina
regulating proceedings in the administration of estates are
found in the record. Section 1374 of said code confers
jurisdiction upon the clerk of the superior court of the
county to grant letters of administration of the estates of
intestates in the following cases :

"(1) Where the decedent, at or immediately previous to his death, was domiciled in the county of such clerk, in whatever place such death may have happened;

"(2) Where the decedent at his death had his fixed place of domicile in more than one county the clerk of any such county has jurisdiction;

"(3) Where the decedent, not being domiciled in this State, died out of the State, leaving assets in the county of such clerk, or assets of such decedent thereafter come into the county of such clerk;

"(4) Where the decedent, not being domiciled in this State, died in the county of such clerk, leaving assets in the State, or assets of such decedent thereafter come into the State."

Section 1376 provides that letters "shall be granted" to persons entitled thereto and applying for the same, in the following order:

"(1) To the husband or widow, except as hereinafter provided;

"(2) To the next of kin in the order of their degree, where they are of different degrees; if of equal degree, to one or more of them, at the discretion of the clerk;

"(3) To the most prominent creditor who resides within the State, and proves his debt on oath before the clerk.

"(4) To any other person legally competent."

Section 1377 contains certain disqualifications of minors, non-resident aliens, etc.

Sections 1378 and 1379 provide that when any person applies for letters, and any other person has a prior right, the written renunciation of such person or persons shall be produced and filed with the clerk; and that when the person having such prior right is under disqualification of age or is temporarily absent from the State, he shall have six months after removal of disability, or return to the State, in which to renounce his right or to apply for letters.

Other sections of importance are given in full, as follows:

"Sec. 1380. When persons entitled to administration

deemed to have renounced.—If any person, entitled to letters of administration fails or refuses to apply for such letters within thirty days after the death of the intestate, the clerk, on application of any party interested, shall issue a citation to such person to show cause, within twenty days after service of the citation, why he should not be deemed to have renounced. If, within the time named in the citation, he neglects to answer or to show cause, he shall be deemed to have renounced his right to administer, and the clerk must enter an order accordingly, and proceed to grant letters to some other person.

" Sec. 1381. On application for letters of administration, the clerk must ascertain by affidavit of the applicant or otherwise :

" (1) The death of the decedent and his intestacy ;

" (2) That the applicant is the proper person entitled to administration, or that he applies after the renunciation of the person or persons so entitled ;

" (3) The value and nature of the intestate's property, the names and residence of all parties entitled as heirs or distributees of the estate, if known, or that the same cannot, on diligent inquiry, be produced ; which of said parties are minors, and whether with or without guardians, and the names and residences of such guardians, if known.

" Such affidavit or other proof must be recorded and filed by the clerk."

The following is the affidavit upon which letters were granted ; it was filed in the office of the clerk of the superior court of Buncombe County, September 30, 1891 :

"In the matter of the administration of the estate of Samuel E. Gorman. Before J. L. Cathey, C. S. C.

" J. C. Brown, being sworn, doth say—

"That Samuel E. Gorman, late of said county, is dead, without leaving any will and testament, and that he is the proper person entitled to letters of administration on the estate of the said Samuel E. Gorman.

" Further, that the value of said estate, so far as can be

ascertained at the date of this application, is about $25.00, and that the wife of said Gorman and his three children are entitled as heirs and distributees thereof.

(Signed) "J. C. BROWN."

Another affidavit was made by said Brown that he believed said Gorman died without leaving a will; that he would faithfully administer the estate, &c., and a bond was given in the sum $50, with two sureties, conditioned for the faithful performance of his duties as administrator. Thereupon letters were issued under the seal of the clerk, as follows:

"BUNCOMBE COUNTY, STATE OF NORTH CAROLINA.
"*In the Superior Court.*

"To all whom these presents shall come, Greeting:

"It being satisfactorily proven to the undersigned, clerk superior court for Buncombe County, that Samuel E. Gorman, late of said county, is dead, without having made and published any last will and testament, and it appearing that J. C. Brown is entitled to the administration of the estate of the deceased, and having qualified as administrator according to law:

"Now, these are therefore to empower the said administrator to enter in and upon all and singular the goods and chattels, rights and credits, of the said deceased, and the same to take into possession, wheresoever to be found, and all the just debts of the said deceased to pay and satisfy and the residue of said estate to distribute according to law."

The record of the suit brought by Brown, its removal to the Federal court, and subsequent settlement are sufficiently stated above.

As regards the jurisdiction of the North Carolina court to appoint an administrator, the court charged the jury that it depended upon the existence of one of two facts which he submitted to their inquiry and determination, as follows:

(1) That intestate, at the time of his death, had his domicile in Buncombe County, State of North Carolina. And in this connection the jury were told that if intestate had

been living in the District of Columbia with his wife and children, and had supported and visited them there, and had only gone to North Carolina for temporary employment, with the intention of returning to said District, then his domicile was there and not in the State of North Carolina.

(2) If not domiciled in Buncombe County, North Carolina, then that intestate had assets within the jurisdiction of the courts thereof. The jury were then told that the record was *prima facie* evidence of the existence of assets ;˙ but their attention was specially called to the failure of the record to mention any, as well as to defendant's failure to offer evidence outside of the record, and to the evidence offered by plaintiff tending to show that there were none.

The jury were then further charged that, in the event they should find, either that intestate had his domicile in Buncombe County, or died leaving assets there, they should inquire whether the settlement of the case had been made in good faith. And they were charged that if the settlement was not made in good faith, but that the administrator acted in the interest of the defendant and not of the widow and children of intestate, and that the officers of defendant knew this and acted with him in an attempt to discharge the cause of action by the payment of an inconsiderable sum of money, " then that would be a fraud which would vitiate the proceedings, and the receipt and the release would be void."

There was no evidence touching the facts of the settlement other than as disclosed by the recitals of the receipt and the judgment of the court.

The defendant relied exclusively upon the conclusiveness of said record as a bar to the action, and offered a series of instructions to that effect, all of which were refused.

The jury found for the plaintiff, and judgment was rendered thereon after defendant's motion for a new trial had been overruled.

*Mr. Hugh L. Bond, Jr.*, and *Edward Duffy* for the appellant:

The vital question in this case, is, whether or not the appointment of Brown as administrator could be attacked in this proceeding. There is no evidence in the record of a citation to the widow in accordance with section 1380, Code, N. C., or a renunciation in accordance with section 1378. But even granting that these sections were not complied with and that they should have been, still this cannot be taken advantage of collaterally. *Lyle* v. *Siler*, 103 N. C. 261 ; *Garrison* v. *Cox*, 95 N. C. 353. If the appointment of Brown was fraudulent or without jurisdiction, it was the duty of the plaintiff to attack it in a direct proceeding and set it aside. The defendant was bound by it and could not set it aside. *Kent* v. *Railroad*, 6 M. 335. Nor could it plead this suit in abatement to the suit by Brown. *Stanton* v. *Embrey*, 93 U. S. 548 ; *Smith* v. *Insurance Co.*, 57 Fed. Rep. 133. The defendant, therefore, had to defend Brown's suit or settle.

Under a proper construction of the North Carolina statute domicile is not a requisite of jurisdiction. The thing necessary to give jurisdiction, and the only thing, is the death of a person without administration having been granted. When the fact of death is once established all other facts to be determined are merely subsidiary and cannot be shown not to exist in a collateral proceeding. *Scott* v. *NcNeal*, 154 U. S. 39 ; *Grignon* v. *Astor*, 2 How. 319 ; *Cornet* v. *Williams*, 20 Wall. 226. Even granting that question of domicile was a jurisdictional question, yet the courts have refused to allow the records of a probate court to be attacked in a collateral proceeding, on the ground of public policy. *Holmes* v. *Railroad*, 5 Fed. Rep. 523 ; *Raborg* v. *Hammond*, 2 H. & G. 42.

The North Carolina statute, however, uses the word " domicile." The word domicile means the place where a person has his fixed habitation without any present intention of removing therefrom, and necessarily, therefore, a person can have only one domicile at the same time. The statute, however, provides for the case where a decedent " at his death

had his fixed place of domicile in more than one county."
This case is impossible to arise if the word domicile is to
be taken to mean the fixed place of abode with no inten-
tion of removing therefrom.   To make the statute as a
whole intelligible the word domicile will have to be trans-
lated residence.   Generally residence and domicile mean
the same thing.   *Crawford* v. *Wilson*, 4 Barb. 504, 518 ;
*Abington* v. *N. Bridgewater*, 23 Pick. 170, 176.

The probate court also had jurisdiction by reason of the
death occurring in North Carolina.   The statute giving a
claim for damages, such claim gave the court jurisdiction
to appoint an administrator.   Tiffany, Death by Wrong-
ful Act, sec. 111.

When the court rendered judgment it must necessarily
have found that Brown was the administrator of Gorman,
and for this reason it was error for the lower court to allow
proof to the contrary.   That judgment could not be at-
tacked collaterally.   *Florentine* v. *Barton*, 2 Wall. 210 ;
*Grignon* v. *Astor*, 2 How. 319 ; *Foltz* v. *Railroad*, 60 Fed.
Rep. 316 ; *Landford* v. *Dunklin*, 71 Ala. 594 ; *May* v.
*Marks*, 74 Ala. 249.

This judgment, rendered in the terms that it was, created
an estoppel.   *Merritt* v. *Campbell*, 47 Cal. 542 ; *United
States* v. *Parker*, 120 U. S. 89, 95.

Where one administrator sues for the death and recovers
judgment, such judgment must bind every other adminis-
trator, or the decision of the Supreme Court in *Dennick* v.
*Railroad Co.*, 103 U. S. 11, would work the grossest in-
justice.   This, however, is a new question in the law.   *Nel-
son* v. *Railroad*, 88 Va. 971 ; *Morris* v. *Railroad*, 65
Iowa, 727.

Brown had full authority to use his discretion in settling
the suit in North Carolina, and if he overstepped his duties
he and not the defendant is to suffer for the same.   *Mc-
Guire* v. *Rogers*, 74 Md. 192 ; *Hartigan* v. *Railroad*, 86
Cal. 142 ; Woerner, Admr., sec. 326.   The presumption is
that where a person is at a certain place and dies there his

domicile is there. *Leake* v. *Gilchrist*, 2 Dev. (N. C). 78 ; *Crawford* v. *Wilson*, 4 Barb. 519.

If there was fraud, the remedy of the plantiff is against Brown and not against the defendant. And, besides, the judgment obtained by Brown against the defendant is not re-examinable for fraud in a collateral proceeding. *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 292.

*Mr. A. S. Worthington* for the appellee :

1. Neither the alleged release by the North Carolina administrator nor the judgment for costs in the North Carolina suit was a bar to the action in this District. This subject is discussed in the brief for the appellant as though administrators in different jurisdictions of the same intestate stand in such privity with each other that a judgment for or against one is conclusive for or against the other. But just the contrary is the law. It is not even evidence against an administrator appointed elsewhere. On this point we need look no further than to the decisions of the Supreme Court of the United States. *Aspden* v. *Nixon*, 4 How. 467 ; *Stacy* v. *Thrasher*, 6 How. 44 ; *McLean* v. *Meek*, 18 How. 16 ; *Johnson* v. *Powers*, 139 U. S. 156. These cases show that it is the settled law in this jurisdiction that where a person is in litigation with the administrator of an estate in one jurisdiction, the result of that litigation cannot be used even as evidence in another litigation by the same person over the same subject-matter with another administrator of the same intestate in a different jurisdiction. And of course, if a judgment is not evidence, much less is a voluntary acquittance. Upon this ground alone the court below should have swept out of the case the alleged release and the record from the North Carolina court. It is therefore wholly immaterial whether the trial justice was right in holding that the appointment of the North Carolina administrator might be assailed collaterally by showing that the deceased was not domiciled in Buncombe County, and had no assets there.

Of course, it is true that a payment made in good faith to an administrator duly appointed may be a bar to a demand made by another administrator subsequently appointed in a different jurisdiction. This is well illustrated by the case of *Wilkins* v. *Ellet*, 9 Wall. 740 and 108 U. S. 256. If letters of administration on the estate of Gorman had been duly taken out in the first place in North Carolina and the appellant had make a fair settlement with him of this claim and afterwards administration had been taken out in the District of Columbia and suit brought, the payment to the North Carolina administrator would have been a good defence. But, in fact, the first administration was here, and this action was first brought, and the defendant had been duly served with a summons in this District before any step was taken in the North Carolina suit. If, therefore, the defendant was improperly subjected to two litigations over the same subject-matter by different representatives of the same decedent, and it could defend one by pleading the other, it was its duty to set up in the North Carolina action the pendency of the suit in this District. The decisions of the Supreme Court in *Wilkins* v. *Ellett*, above mentioned, are both based upon the ground not only that there was no administration in Tennessee when the debt was paid to the Alabama administrator, but that there were in Tennessee " neither creditors nor next of kin " (108 U. S. 259). In the present case not only were the real creditors—the wife and children—in the District of Columbia, but their trustee—the administrator—properly authorized to collect their claim here had begun his action for that purpose. Even if the suit in North Carolina had gone to judgment in the regular way, and had been determined in favor of the North Carolina administrator, that would have been no defence to the action previously brought here. But there was no such judgment. The record put in evidence by the appellant shows that the court in North Carolina never considered or passed upon the merits of the case ; its judgment is for costs only, and even these costs

are not shown to have been paid. But a mere judgment for costs amounts to nothing in a subsequent litigation, even between the same parties.

Here again appears the immateriality of the questions sought to be raised in this record concerning the rulings of the court below as to the collateral attack on the appointment of the North Carolina administrator. It did not make a particle of difference whether his appointment was valid or not. When the question is as to the existence of the facts necessary to give a court jurisdiction of a case its judgment is assailable in a collateral proceeding. It is not necessary on this subject to look further than the case of *Thompson* v. *Whitman*, 18 Wall. 457, and the subsequent case of *Reynolds* v. *Stockton*, 140 U. S. 254.

2. The appointment of Brown in North Carolina was void. The court did not instruct the jury to disregard Brown's appointment altogether, but told them to do so only in case they found from the evidence that the deceased had his domicile in the District of Columbia at the time of his death and had no assets in Buncombe County. It is contended for the appellant that the claim growing out of the killing of young Gorman was itself an asset in North Carolina sufficient to give the court jurisdiction, although the domicile of the decedent was elsewhere and he had no property in the State. The weight of authority on this subject seems to be against this contention. *Railroad Co.* v. *Swayne's Adm.*, 26 Ind. 477 ; *Perry* v. *Railroad Co.*, 29 Kan. 420; *Railroad Co.* v. *Cragin*, 71 Ill. 177; *Marvin* v. *R. & T. Co.*, 49 Fed. Rep. 436. But this decedent was not killed in Buncombe County. The accident occurred in Iredell County. It is presumed that of this geographical fact the court will take notice. Therefore, if the killing alone gave jurisdiction it gave it to the proper court in Iredell County, and not to Mr. Cathey in Buncombe County.

The jury having found that the domicile of the decedent was in the District of Columbia, and that he had no assets

in Buncombe County, the clerk of the superior court of that county was without jurisdiction to appoint an administrator in the case. On all the authorities the validity of Brown's appointment could therefore be assailed collaterally.

3. It was competent to assail the release alleged to have been given by Brown, fortified by a judgment for costs in the North Carolina suit, by showing that the settlement with Brown was not made in good faith. The record teems with evidence, not only tending to show that this settlement was a fraudulent one, but establishing it to the satisfaction of every reasonable person.

Mr. Justice SHEPARD delivered the opinion of the Court:

Whether the judgment appealed from shall be reversed or affirmed depends upon the faith and credit to be given to the proceedings in the courts of North Carolina, commencing with the grant of letters of administration to Brown and ending with the judgment of the United States circuit court confirming the settlement that had been made by him. All minor questions arising on the trial may be pretermitted. Indeed, the latter judgment may be left out of consideration, in so far as the validity of the appointment of the administrator is concerned. This judgment was sufficient for its own purposes. It was a final judgment in the suit brought and is as effectual as if it had directly adjudicated the amount of the recovery upon a formal trial. *United States* v. *Parker*, 120 U. S. 89; *Merrett* v. *Campbell*, 47 Cal. 542. At the same time, however, it added no weight to the adjudication of the probate court under which Brown was appointed administrator. If, in fact, that order was void for want of jurisdiction, this judgment could not cure it; for the validity of the appointment of the administrator was not one of the questions to be adjudicated. *Griffith* v. *Frazier*, 8 Cranch, 9, 29.

It is virtually agreed that the statute of North Carolina, giving the right of action, is substantially similar to the act

of Congress in force in the District of Columbia. The right of action is in the personal representative of the deceased, to be brought within one year; and the money recovered "is not liable to be applied as assets in the payment of debts or legacies, but shall be disposed of as provided for the distribution of personal property in case of intestacy." Code N. C. sec. 1500. Hence, it is conceded that the action could be maintained in this jurisdiction wherein the defendant carries on business and maintained a general office, although the death occurred in North Carolina. The suit could therefore be prosecuted in either jurisdiction by a lawfully appointed administrator, and until judgment rendered in one, the mere pendency of suit in the other would, it seems, be no bar to the prosecution of either. *Stanton* v. *Embrey*, 93 U. S. 548, 554. But when one passes into judgment the other must necessarily be barred. There cannot be two recoveries, in the same right upon the same cause of action. Payment to the administrator in North Carolina would also be a good bar. *Wilkins* v. *Ellett*, 108 U. S. 256.

Under the probate act of North Carolina the clerk of the superior court of Buncombe County was vested with judicial power and discretion in the matter of the appointment of administrators for the estates of persons dying intestate in that State, and the entry of the order of appointment must be regarded as the judicial act of one in the exercise of a general jurisdiction. In that view it is of no consequence that the record does not show a strict compliance with the requirements of the statutes hereinabove quoted, with respect to the giving of notice and the renunciation of those who had the preference. *Garrison* v. *Cox*, 95 N. C. 353 ; *Lyle* v. *Siler*, 103 N. C. 261–264 ; see also *Kelly* v. *West*, 80 N. Y. 139–145 ; *Simmons* v. *Saul*, 138 U. S. 439, 452, 453.

Two of the statutory conditions in which the clerk of the superior court of a county in North Carolina can appoint an administrator for the estate of an intestate have

been discussed in this case.    One is, " where the decedent
at or immediately previous to his death was domiciled in
the county of such clerk."    The other is, " where the de-
cedent, not being domiciled in the State, died in the county
of such clerk, leaving assets in the State."    Several inter-
esting questions arise out of the second of these condi-
tions ; but in the view we have taken of the case, it is not
necessary to decide them.    Besides, we think it apparent
from the record that the action of the clerk in granting the
letters was founded wholly upon the supposed existence of
the first condition ; that is, upon the assumption that the
deceased, " at or immediately previous to his death, .was
domiciled in the county of such clerk."

What is a person's domicile, in the ordinary legal sense of
that word, is often a matter of perplexing inquiry, determ-
inable chiefly by the evidence of the person himself ; for it
is shown, not so much by his actual conduct and move-
ments, as by the intention accompanying his actions.    There
was some apparent difficulty in this instance, but it may be
conceded, as no doubt the jury intended to find, that, at and
immediately previous to his death, the domicile of the de-
ceased was in fact in the District of Columbia, where his
wife and children resided.

It is not improbable that the word " domicile," as used
in the statute, was not intended to have its ordinary mean-
ing.    It is impossible to conceive the existence of more than
one domicile, in the strict sense, at one and the same time ;
yet, one clause of the section under consideration provides
that, " where the decedent at his death had his *fixed place*
*of domicile in more than one county*, the clerk of any such
county has jurisdiction."    The .proof offered by plaintiff
tended to show that deceased's domicile, his real home, was
in the District of Columbia ; but that he had been in Bun-
combe County, North Carolina, for about a year working at
his trade of plumber.

It is not impossible to conceive that the clerk may have
considered the foregoing provision of the statute as apply-

ing to just such a state of facts as this case presented; where a person, having a family home and legal domicile in one jurisdiction, might, for convenience of business, or the necessity of procuring a livelihood, actually remain for a considerable period of time in another, and thus create what has sometimes been called a "commercial residence" therein.

Be this as it may, however, the deceased was described in the application, or affidavit, upon which the letters were granted as "late of the county of Buncombe." This was substantially an allegation that, "at or immediately previous to his death he was domiciled in the county of such clerk."

Having general jurisdiction in the matter of granting letters of administration upon the estates of deceased persons, the clerk was called upon, judicially, to inquire and determine whether intestate at, or immediately before, his death, was domiciled in his county. Grant that he erred in his conclusion, yet he nevertheless found that the deceased had been so domiciled and issued the letters accordingly.

The question, then, upon which the case must necessarily turn, is this: Can the grounds of that judgment be inquired into in this collateral proceeding in another jurisdiction, and the grant of letters declared void for the error committed?

The proposition involved has been presented to the courts in many phases, has undergone much discussion and the result has been a serious conflict of decisions. These it would be an unprofitable as well as almost endless task to review. After much consideration, we can arrive at no other conclusion than that the grant of the letters of administration is not subject to collateral attack, and that the court erred in submitting that issue to the jury.

We are not unmindful that the application of the rule in this particular case is a hard one and that it may work an irreparable injury to the appellee and next of kin; but, on the other hand, we believe that the rule itself is founded in reason and is promotive of a sound public policy, in that it tends to the ending of litigation over the same matter, the quieting of titles and the guaranty of the rights of innocent

persons acquired in confidence in the integrity and stability of the decisions of the courts of the country. The abrogation of the rule would lead to as great, and more frequent, hardships against which the greatest diligence could not always guard.

It is notorious that *ex parte* proceedings of this character are often loosely conducted and abound in irregularities and errors, and not infrequently in attempts at fraud; but they are an essential part of the machinery of justice, and by the necessities of the situation are in the nature of proceedings *in rem*, which bind all persons, though not actual parties, and become the foundations of innumerable rights and titles.

The rule adhered to has the sanction, it is believed, of a majority of the courts of last resort in this country that have had it under consideration. *Railway Co.* v. *Mahoney*, 89 Tenn. 311, 317; *Eller* v. *Richardson*, Id. 575, 579; *Raborg* v. *Hammond*, 2 H. & G. 42, 49; *Abbott* v. *Coburn*, 28 Vt. 663, 667; *Andrews* v. *Avory*, 14 Grattan, 229, 236; *Johnson* v. *Beazley*, 65 Mo. 250; *Quidort's Admr.* v. *Pergeaux*, 18 N. J. Eq. 472, 476, 477; *Burdett* v. *Silsbee*, 15 Tex. 604, 616; *Murchison* v. *White*, 54 Tex. 78, 82; *Duson* v. *Dupre*, 32 La. Ann. 896; *Coltart* v. *Allen*, 40 Ala. 155; *Barclift* v. *Treece*, 77 Ala. 528, 531; *Estate of Griffith*, 84 Cal. 107; *Corrigan* v. *Jones*, 14 Colo. 311; *Bostwick* v. *Skinner*, 80 Ill. 147, 151; *Wight* v. *Walbaum*, 39 Ill. 554, 564; *Dequindre* v. *Williams*, 31 Ind. 444, 455; *Rollins* v. *Henry*, 84 N. C. 569, 574; see also *Holmes* v. *Oregon & Cal. Railroad Co.*, 7 Sawyer C. C. 380.

We have found no decision of the Supreme Court of the United States directly in point, but the conclusion seems to be within the principle established by many, including the following: *Grignon's Lessees* v. *Astor*, 2 How. 319; *Florentine* v. *Barton*, 2 Wall. 216; *Mohr* v. *Manierre*, 101 U. S. 424; *Wilkins* v. *Ellett*, 108 U. S. 256; *Simmons* v. *Saul*, 138 U. S. 439, 451; *McCormick* v. *Sullivant*, 10 Wheat. 192, 199; *Erwin* v. *Lowry*, 7 How. 172, 180; *Dowell* v.

*Applegate,* 152 U. S. 327, 338. *Noble* v. *Union River Logging Railroad,* 147 U. S. 165, 173 ; *Evers* v. *Watson,* 156 U. S. 527, 533.

It has been urged with much earnestness and ability that the question here presented is not ruled by the foregoing cases, but is to be governed by the doctrine announced in *Thompson* v. *Whitman,* 18 Wall. 457, and *Reynolds* v. *Stockton,* 140 U. S. 254. That proposition will now be considered. The first of those cases was an action of trespass for the seizure of a vessel. The defence was that the vessel had been engaged in raking clams in the waters of New Jersey in violation of the laws of that State ; that the defendant, as the sheriff of Monmouth County, in said State, seized said vessel in the waters of said county, and brought her before two justices of the county, who, by virtue of the power conferred by the law aforesaid, entered judgment of condemnation against her for violation thereof, as having been seized in said county while unlawfully raking clams. The court below permitted the plaintiff to show that the vessel, when seized, was not within the limits of Monmouth County, and therefore not subject to seizure and condemnation. The Supreme Court, in affirming the judgment, held that the judgment of condemnation was not conclusive of the fact that seizure had been made in the said county.

In the well-considered case of *Holmes* v. *Oregon & Cal. Railroad Co.,* 7 Sawyer C. C. 384, 400, which turned upon the very question here presented, Judge SAWYER met the argument founded on *Thompson* v. *Whitman* in the following words, which meet our approval. Said he: " I apprehend it will be found, by examining the case of *Thompson* v. *Whitman,* and the line of cases cited and commented on in that case, and comparing them with the other line of decisions cited, which were carefully avoided by the court in its opinion, that, after a cause of action has arisen, after the cause of action is complete, something must always be done by the court, through its executive or ministerial officers, or somebody else on behalf of the court, to give the

court jurisdiction either of the person, or, in a proceeding *in rem*, of the thing; such as serving a summons in a case at law or subpœna in chancery, upon the person within the State, giving a notice in some prescribed place, mode or form, or seizing the thing.   To get jurisdiction of the person, he must not only be served with process, but he must be served within the territorial jurisdiction of the court, as within the same State.   In such case, service within the State is the jurisdictional fact to be performed by and upon the authority of the court through its ministerial officers, or other agencies of the court appointed by law.   In some States, as in New York, the service may be by private parties; but they act by the authority and on behalf of the court.   In matters *in rem* there must be a seizure, and often some notice given to the parties in interest, by the court, in some prescribed mode.   In such cases the seizure and notice are jurisdictional facts, subsequent to, and wholly independent of, the cause of action and of all pre-existing judicial facts not depending upon the action of the court, or its appointed agencies.   In *Thompson* v. *Whitman*, the offence was complete when the vessel engaged in gathering oysters within the waters of New Jersey contrary to the statutes of that State.   But the cause of action and forfeiture being complete, it was necessary to seize the vessel within the boundaries of the county over which the court had jurisdiction, to give jurisdiction to the court.   The seizure within the county was the jurisdictional fact, and this was an act to be performed by the court, or on its behalf, through the agencies appointed by law.   The jurisdictional fact was an act to be performed to get jurisdiction of the thing, in all respects analogous to the service of summons within the State in order to acquire jurisdiction of the person, or the levy of an attachment upon property in an attachment suit in order to get jurisdiction of the property.   And this is the class of cases cited as authorities and commented on by the court in *Thompson* v. *Whitman*, and those acts to be performed by, or on behalf of

the court, to acquire jurisdiction of the person or thing, the class of jurisdictional facts that may be questioned collaterally under this authority and those cited, even though the court must have passed over those facts.   *   *   * Whenever the court undertakes to acquire jurisdiction over parties or things, through the acts of officers or other lawfully appointed agencies, performed by its authority, or on its behalf, it must see that the proper acts have been duly performed, and whether they have been performed or not, under the decision referred to, may be inquired into collaterally."

*Reynolds* v. *Stockton, supra,* simply decides that a party who appeared and answered to a complaint, but took no subsequent part in the proceedings, was not concluded by a judgment, rendered in his absence, which was not responsive to the pleadings but wholly outside the issues therein.

Neither is the view we have adopted in conflict with anything fairly deducible from the doctrine of the decisions of that court, that letters of administration, issued upon the estate of a living man, are void.   The jurisdiction of the probate court is limited to the estates of *deceased* persons. " The decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint with the character or powers of an administrator.   The case, in truth, was not one within his jurisdiction.   It was not one which he had a right to deliberate.   It was not committed to him by law.   And although one of the points accrues in all cases proper for his tribunal, yet that point cannot bring the subject within his jurisdiction."   MARSHALL, C. J., in *Griffith* v. *Frazier,* 8 Cranch, 9, 23.   Again it was said in *Mutual Benefit Life Ins. Co.* v. *Tisdale,* 91 U. S. 238, 243, that " death was not the *res* presented to it ; " and that whether the applicant shall receive letters of administration " was the *res,* and upon that only has there been an adjudication."   See also *Scott* v. *McNeal,* 154 U. S. 34, 48.   *Simmons* v. *Saul,* 138 U. S. 439, 451, is a case more nearly like the case at bar than

any above cited.   One Robert M. Simmons died intestate
in Louisiana in 1830 possessed of an inchoate claim against
the United States for 640 acres of land, which, among
others of similar nature, was confirmed by act of Congress
in 1858.   Deceased had no children, but left brothers and
sisters who inherited his estate.   Under the code of Louisi-
ana " a succession is called vacant when no one claims it,
or when all the heirs are unknown, or when all known
heirs have renounced it."   By another article, if a succes-
sion under $500 in value be so small, or so much in debt
that no one will accept the curatorship, the judge, after
having ordered an inventory of the effects, shall appoint the
district attorney of the district curator, who shall cause
the effects to be sold and the proceeds applied to the pay-
ment of the debts.   Parties desiring to obtain possession
and control of the land certificate in the year 1872 in-
duced the district attorney to take out letters under the
foregoing provision.   The certificate was sold for $30 to
one Foster, with whom, as alleged, defendants colluded.
There were no debts and the purchase money was expended
in the costs of the proceeding.   The heirs had no knowl-
edge of these proceedings until long afterwards.   In a suit
brought to declare a trust in the land located under the
certificate, it was held that the judgment of the probate
court could not be collaterally impeached.   Mr. Justice
Lamar, speaking for the court, said :  " The court therefore
had before it in the petition, the death of Simmons within
the parish, his intestacy, the possession of property, and
the smallness of the estate.   The order granting letters of
administration was a judicial determination of the existence
of all those facts."   He also cites with approval, and quotes
extracts from, the opinion of the Supreme Court of Louisi-
ana in *Duson* v. *Dupre*, 32 La. Ann. 896, wherein it was
expressly held that it could not be shown collaterally that
the intestate had resided and died in the parish of St. Lan-
dry, in order to invalidate the appointment of a curator by
the probate court of the parish of Orleans.

This brings us to the consideration of that part of the charge which submitted to the determination of the jury whether the judgment of the circuit court of the United States, based on the settlement between the parties, was fraudulently obtained.

This was also error. In the first place, there was no evidence upon which to found the charge. There was nothing but the fact that the cause was settled out of court. Suspicion is not proof. In the second place, the administrator had the right to collect the claim by suit or otherwise. If he colluded with the defendant and sacrificed the interests of those whom he represented, he might have been made to answer therefor ; and he might have been removed and a suit brought in the court which rendered the judgment, to set it aside for fraud. Being, as we have held, a valid judgment on its face and binding upon all persons represented by, or in privity with, the administrator, it is entitled to full faith and credit in this jurisdiction, and cannot be collaterally impeached for fraud. *Simmons* v. *Saul*, 138 U. S. 439, 458 ; *Christmas* v. *Russel*, 5 Wall. 290, 303 ; *Hanley* v. *Donoghue*, 116 U. S. 1, 4. It is proper to add in connection with the admission of hardship in this case, that the plaintiff did not deny knowledge of the appointment of the administrator in North Carolina or of the pendency of the suit by him. It is apparent that he was informed of all that took place. Instead of appearing there, as he might have done, and obtaining control of that administration and prosecuting that suit, he preferred to continue his suit in this jurisdiction, and rely upon the nullity of the grant of letters in that.

· For the errors complained of in the charges given and refused, the judgment must be *reversed, with costs to the appellee, and the cause remanded for a new trial ; and it is so ordered.*