## THOMPSON *v.* WHITMAN.

1. Neither the constitutional provision, that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State, nor the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered.

2. The record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist.

3. Want of jurisdiction may be shown either as to the subject-matter or the person, or, in proceedings *in rem*, as to the thing.

4. By a law of New Jersey non-residents were prohibited from raking clams and oysters in the waters of that State under penalty of forfeiture of the vessel employed; and any two justices of the county in which the seizure of the vessel should be made were authorized, on information given, to hear and determine the case: *Held*, that if the seizure was not made in the county where the prosecution took place, the justices of that county had no jurisdiction, and that this fact might be inquired into in an action for making such seizure brought in New York, notwithstanding the record of a conviction was produced which stated that the seizure was made within such county.

ERROR to the Circuit Court for the Southern District of New York; the case being thus:

A statute of New Jersey, approved April 16th, 1846, and commonly known there as the Oyster Law, thus enacts:

"SECTION 7. It shall not be lawful for any person who is not at the time an actual inhabitant and resident of this State, . . . to rake or gather clams, oysters, or shell-fish, . . . in any of

the rivers, bays, or waters of this State, on board of any . . . boat or other vessel; and every person who shall offend herein shall forfeit and pay $20; . . . and the said . . . boat or other vessel, used and employed in the commission of such offence, with all the clams, oysters, clam-rakes, tongs, tackle, furniture, and apparel, shall be forfeited, and the same seized, secured, and disposed of, in the manner prescribed in the ninth and tenth sections of this act.

"SECTION 9. It shall be the duty of all sheriffs . . . to seize and secure any such . . . boat or other vessel as aforesaid, and immediately thereupon give information thereof *to two justices of the peace of the county where such seizure shall have been made,* who are hereby empowered and required to meet at such time and place as they shall appoint for the trial thereof, and hear and determine the same; and in case the same shall be condemned, it shall be sold by the order and under the direction of the said justices, who, after deducting all legal costs and charges, shall pay one-half of the proceeds of said sale to the collector of the county in which such offence shall have been committed, and the other half to the person who shall have seized and prosecuted the same."

This statute being in force, Whitman, a citizen of New York, sued Thompson, sheriff of Monmouth County, New Jersey, in the court below in an action of trespass, for taking and carrying away a certain sloop of his, named the Anna Whitman, her cargo, furniture, and apparel.

The declaration charged that on the 26th of September, 1862, the defendant, with force and arms, on the high seas, in the outward vicinity of the Narrows of the port of New York, and within the Southern District of New York, seized and took the said sloop, with her tackle, furniture, &c., the property of the plaintiff, and carried away and converted the same. The defendant pleaded not guilty, and a special plea in bar. The latter plea justified the trespass by setting up that the plaintiff, a resident of New York, on the day of seizure, was raking and gathering clams with said sloop in the waters of the State of New Jersey, to wit, within the limits of the county of Monmouth, contrary to a law of that State, and that by virtue of the said law the defendant, who

was sheriff of said county, seized the sloop within the limits thereof, and informed against her before two justices of the peace of said county, by whom she was condemned and ordered to be sold.   In answer to this plea the plaintiff took issue as to the place of seizure, denying that it was within the State of New Jersey, or the county of Monmouth, thus challenging the jurisdiction of the justices, as well as the right of the defendant to make the seizure.   On the trial conflicting testimony was given upon this point, but the defendant produced a record of the proceedings before the justices, which stated the offence as having been committed, and the seizure as made, within the county of Monmouth, with a history of the proceedings to the condemnation and order of sale.   The defendant, relying on the provision of the Constitution* which says that—

"Full faith and credit shall be given in each State to the. . . . judicial proceedings of every other State; and that Congress may by general laws prescribe the manner in which such . . . proceedings shall be proved, and the effect thereof:"

and on the act of Congress of May 26th, 1790,† which, after prescribing a mode in which the records and judicial proceedings of the courts of any State shall be authenticated, enacts that—

"The said records and proceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court within the United States, as they have by law or usage in the courts of the State from whence the said records are or may be taken :"

asserted that this record was conclusive both as to the jurisdiction of the court and the merits of the case, and that it was a bar to the action, and requested the court so to charge the jury.   But the court refused so to charge, and charged that the said record was only *primâ facie* evidence of the facts therein stated, and threw upon the plaintiff the burden of proving the contrary.   The defendant excepted,

---

* Article iv, § 1.                    † 1 Stat. at Large, 122.

and the jury, under the direction of the court, found for the plaintiff generally, and, in answer to certain questions framed by the court, found specially, first, that the seizure was made within the State of New Jersey; secondly, that it was not made in the county of Monmouth; thirdly, that the plaintiff was not engaged on the day of the seizure in taking clams within the limits of the county of Monmouth. Judgment being rendered for the plaintiff, the case was brought here for review. .

The chief error assigned was the charge of the court, abovementioned, that the record from New Jersey was only *primâ facie* evidence of the facts which it stated; though the counsel for the plaintiff in error also argued that if the record was not conclusive of the facts stated in it, and if the seizure was first made outside of the limits of Monmouth County, yet that confessedly the vessel was brought right into Monmouth County, so that the seizure, being continuous, might properly enough be held to have been made there; and that this was particularly true, if it was assumed, as it was on the other side, that the vessel, when first seized, though seized within the State, was not seized within the limits of any county.

*Mr. C. N. Black, for the plaintiff in error; Mr. R. Gilchrist, attorney-general of New Jersey, intervening and arguing in the same interest. Messrs. W. M. Evarts and J. L. Cadwalader, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The main question in the cause is, whether the record produced by the defendant was conclusive of the jurisdictional facts therein contained. It stated, with due particularity, sufficient facts to give the justices jurisdiction under the law of New Jersey. Could that statement be questioned collaterally in another action brought in another State? If it could be, the ruling of the court was substantially correct. If not, there was error. It is true that the court charged generally that the record was only *primâ facie* evidence of

the facts stated therein; but as the jurisdictional question was the principal question at issue, and as the jury was required to find specially thereon, the charge may be regarded as having reference to the question of jurisdiction. And if upon that question it was correct, no injury was done to the defendant.

Without that provision of the Constitution of the United States which declares that " full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State," and the act of Congress passed to carry it into effect, it is clear that the record in question would not be conclusive as to the facts necessary to give the justices of Monmouth County jurisdiction, whatever might be its effect in New Jersey. In any other State it would be regarded like any foreign judgment; and as to a foreign judgment it is perfectly well settled that the inquiry is always open, whether the court by which it was rendered had jurisdiction of the person or the thing. " Upon principle," says Chief Justice Marshall, " it would seem that the operation of every judgment must depend on the power of the court to render that judgment; or, in other words, on its jurisdiction over the subject-matter which it has determined. In some cases, that jurisdiction unquestionably depends as well on the state of the thing as on the constitution of the court. If by any means whatever a prize court should be induced to condemn, as prize of war, a vessel which was never captured, it could not be contended that this condemnation operated a change of property. Upon principle, then, it would seem that, to a certain extent, the capacity of the court to act upon the thing condemned, arising from its being within, or without, their jurisdiction, as well as the constitution of the court, may be considered by that tribunal which is to decide on the effect of the sentence."*

The act of Congress above referred to, which was passed 26th of May, 1790, after providing for the mode of authenticating the acts, records, and judicial proceedings of the

---

* Rose *v.* Himely, 4 Cranch, 269. To the same effect see Story on the Constitution, chap. xxix; 1 Greenleaf on Evidence, ₰ 540.

States, declares, " and the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from whence the said records are or shall be taken." It has been supposed that this act, in connection with the constitutional provision which it was intended to carry out, had the effect of rendering the judgments of each State equivalent to domestic judgments in every other State, or at least of giving to them in every other State the same effect, in all respects, which they have in the State where they are rendered. And the language of this court in *Mills* v. *Duryee*,* seemed to give countenance to this idea. The court in that case held that the act gave to the judgments of each State the same conclusive effect, as records, in all the States, as they had at home; and that *nil debet* could not be pleaded to an action brought thereon in another State. This decision has never been departed from in relation to the general effect of such judgments where the questions raised were not questions of jurisdiction. But where the jurisdiction of the court which rendered the judgment has been assailed, quite a different view has prevailed. Justice Story, who pronounced the judgment in *Mills* v. *Duryee*, in his Commentary on the Constitution,† after stating the general doctrine established by that case with regard to the conclusive effect of judgments of one State in every other State, adds: " But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given, to pronounce it; or the right of the State itself to exercise authority over the person or the subject-matter. The Constitution did not mean to confer [upon the States] a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within their territory." In the Commentary on the Conflict of Laws,‡ substantially the same remarks are repeated, with this addition: " It " (the Constitution) " did not make the

---

* 7 Cranch, 484.          † Sec. 1313.          ‡ Sec. 609.

judgments of other States domestic judgments to all intents and purposes, but only gave a general validity, faith, and credit to them, as evidence. No execution can issue upon such judgments without a new suit in the tribunals of other States. And they enjoy not the right of priority or lien which they have in the State where they are pronounced, but that only which the *lex fori* gives to them by its own laws in their character of foreign judgments." Many cases in the State courts are referred to by Justice Story in support of this view. Chancellor Kent expresses the same doctrine in nearly the same words, in a note to his Commentaries.* " The doctrine in *Mills* v. *Duryee*," says he, "'is to be taken with the qualification that in all instances the jurisdiction of the court rendering the judgment may be inquired into, and the plea of *nil debet* will allow the defendant to show that the court had no jurisdiction over his person. It is only when the jurisdiction of the court in another State is not impeached, either as to the subject-matter or the person, that the record of the judgment is entitled to full faith and credit. The court must have had jurisdiction not only of the *cause*, but of the *parties*, and in that case the judgment is final and conclusive." The learned commentator adds, however, this qualifying remark: " A special plea in bar of a suit on a judgment in another State, to be valid, must deny, by positive averments, every fact which would go to show that the court in another State had jurisdiction of the person, or of the subject-matter."

In the case of *Hampton* v. *McConnel*,† this court reiterated the doctrine of *Mills* v. *Duryee*, that " the judgment of a State court should have the same credit, validity, and effect in every other court of the United States which it had in the State courts where it was pronounced; and that whatever pleas would be good to a suit therein in such State, and none others, could be pleaded in any court in the United States." But in the subsequent case of *McElmoyle* v. *Cohen*,‡

---

\* Vol. 1, p. 281; see also vol. 2, 95, note, and cases cited.
† 3 Wheaton, 234.    ‡ 13 Peters, 312.

the court explained that neither in *Mills* v. *Duryee,* nor in *Hampton* v. *McConnel,* was it intended to exclude pleas of avoidance and satisfaction, such as payment, statute of limitations, &c.; or pleas denying the jurisdiction of the court in which the judgment was given; and quoted, with approbation, the remark of Justice Story, that "the Constitution did not mean to confer a new power of jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the State."

The case of *Landes* v. *Brant,*\* has been quoted to show that a judgment cannot be attacked in a collateral proceeding. There a judgment relied on by the defendant was rendered in the Territory of Louisiana in 1808, and the objection to it was that no return appeared upon the summons, and the defendant was proved to have been absent in Mexico at the time; but the judgment commenced in the usual form, "And now at this day come the parties aforesaid by their attorneys," &c. The court pertinently remarked,† that the defendant may have left behind counsel to defend suits brought against him in his absence, but that if the recital was false and the judgment voidable for want of notice, it should have been set aside by *audita querela* or motion in the usual way, and could not be impeached collaterally. Here it is evident the proof failed to show want of jurisdiction. The party assailing the judgment should have shown that the counsel who appeared were not employed by the defendant, according to the doctrine held in the cases of *Shumway* v. *Stillman,*‡ *Aldrich* v. *Kinney,*§ and *Price* v. *Ward.*‖ The remark of the court that the judgment could not be attacked in a collateral proceeding was unnecessary to the decision, and was, in effect, overruled by the subsequent cases of *D'Arcy* v. *Ketchum* and *Webster* v. *Reid*. *D'Arcy* v. *Ketchum*¶ was an action in the Circuit Court of the United States for Louisiana, brought on a judgment rendered in New York under a local statute, against two defendants, only one of

---

\* 10 Howard, 348.          † Page 371.          ‡ 6 Wendell, 453.
§ 4 Connecticut, 380.          ‖ 1 Dutcher, 225.          ¶ 11 Howard, 165.

whom was served with process, the other being a resident
of Louisiana. In that case it was held by this court that
the judgment was void as to the defendant not served, and
that the law of New York could not make it valid outside
of that State; that the constitutional provision and act of
Congress giving full faith, credit, and effect to the judg-
ments of each State in every other State do not refer to
judgments rendered by a court having no jurisdiction of
the parties; that the mischief intended to be remedied was
not only the inconvenience of retrying a cause which had
once been fairly tried by a competent tribunal, but also the
uncertainty and confusion that prevailed in England and
this country as to the credit and effect which should be given
to foreign judgments, some courts holding that they should
be conclusive of the matters adjudged, and others that they
should be regarded as only *primâ facie* binding. But this
uncertainty and confusion related only to valid judgments;
that is, to judgments rendered in a cause in which the court
had jurisdiction of the parties and cause, or (as might have
been added) in proceedings *in rem*, where the court had ju-
risdiction of the *res*. No effect was ever given by any court
to a judgment rendered by a tribunal which had not such
jurisdiction. " The international law as it existed among
the States in 1790," say the court,* " was that a judgment
rendered in one State, assuming to bind the person of a citi-
zen of another, was void within the foreign State, when the
defendant had not been served with process or voluntarily
made defence, because neither the legislative jurisdiction,
nor that of courts of justice, had binding force. Subject to
this established principle, Congress also legislated; and the
question is, whether it was intended to overthrow this prin-
ciple and to declare a new rule, which would bind the citi-
zens of one State to the laws of another. There was no
evil in this part of the existing law, and no remedy called
for, and in our opinion Congress did not intend to overthrow
the old rule by the enactment that such faith and credit

* Page 176.

should be given to records of judgments as they had in the States where made."

In the subsequent case of *Webster* v. *Reid*,\* the plaintiff claimed, by virtue of a sale made under judgments in behalf of one Johnson and one Brigham against "The Owners of Half-Breed Lands lying in Lee County," Iowa Territory, in pursuance of a law of the Territory. The defendant offered to prove that no service had ever been made upon any person in the suits in which the judgments were rendered, and no notice by publication as required by the act. This court held that, as there was no service of process, the judgments were nullities. Perhaps it appeared on the face of the judgments in that case that no service was made; but the court held that the defendant was entitled to prove that no notice was given, and that none was published.

In *Harris* v. *Hardeman et al.*,† which was a writ of error to a judgment held void by the court for want of service of process on the defendant, the subject now under consideration was gone over by Mr. Justice Daniel at some length, and several cases in the State courts were cited and approved, which held that a judgment may be attacked in a collateral proceeding by showing that the court had no jurisdiction of the person, or, in proceedings *in rem*, no jurisdiction of the thing. Amongst other cases quoted were those of *Borden* v. *Fitch*,‡ and *Starbuck* v. *Murray*;§ and from the latter the following remarks were quoted with apparent approval. "But it is contended that if other matter may be pleaded by the defendant he is estopped from asserting anything against the allegation contained in the record. It imports perfect verity, it is said, and the parties to it cannot be heard to impeach it. It appears to me that this proposition assumes the very fact to be established, which is the only question in issue. For what purpose does the defendant question the jurisdiction of the court? Solely to show that its proceedings and judgment are void, and, therefore, the

---

\* 11 Howard, 437.  †14 Howard, 334.

‡ 15 Johnson, 141.  § 5 Wendell, 156.

supposed record is, in truth, no record. . . . The plaintiffs, in effect, declare to the defendant,—the paper declared on is a record, because it says you appeared, and you appeared because the paper is a record. This is reasoning in a circle."

The subject is adverted to in several subsequent cases in this court, and generally, if not universally, in terms implying acquiescence in the doctrine stated in *D'Arcy* v. *Ketchum*.

Thus, in *Christmas* v. *Russell*,* where the court decided that fraud in obtaining a judgment in another State is a good ground of defence to an action on the judgment, it was distinctly stated,† in the opinion, that such judgments are open to inquiry as to the jurisdiction of the court, and notice to the defendant. And in a number of cases, in which was questioned the jurisdiction of a court, whether of the same or another State, over the general subject-matter in which the particular case adjudicated was embraced, this court has maintained the same general language. Thus, in *Elliott et al.* v. *Peirsol et al.*,‡ it was held that the Circuit Court of the United States for the District of Kentucky might question the jurisdiction of a county court of that State to order a certificate of acknowledgment to be corrected; and for want of such jurisdiction to regard the order as void. Justice Trimble, delivering the opinion of this court in that case, said: " Where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But, if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void."

The same views were repeated in *The United States* v. *Arredondo*,§ *Vorhees* v. *Bank of the United States*,‖ *Wilcox* v. *Jackson*,¶ *Shriver's Lessee* v. *Lynn*,** *Hickey's Lessee* v. *Stewart*,†† and *Williamson* v. *Berry*.‡‡ In the last case the authorities are reviewed, and the court say: " The jurisdiction of any

---

| | | |
|---|---|---|
| * 5 Wallace, 290. | † Page 305. | ‡ 1 Peters, 328, 340. |
| § 6 Peters, 691. | ‖ 10 Id. 475. | ¶ 13 Id. 511. |
| ** 2 Howard, 59, 60. | †† 3 Id. 762. | ‡‡ 8 Id. 540. |

court exercising authority over a subject may be inquired into in every other court when the proceedings in the former are relied upon and brought before the latter by a party claiming the benefit of such proceedings;" and "the rule prevails whether the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common law, or whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of States."

But it must be admitted that no decision has ever been made on the precise point involved in the case before us, in which evidence was admitted to contradict the record as to jurisdictional facts asserted therein, and especially as to facts stated to have been passed upon by the court.

But if it is once conceded that the validity of a judgment may be attacked collaterally by evidence showing that the court had no jurisdiction, it is not perceived how any allegation contained in the record itself, however strongly made, can affect the right so to question it. The very object of the evidence is to invalidate the paper as a record. If that can be successfully done no statements contained therein have any force. If any such statements could be used to prevent inquiry, a slight form of words might always be adopted so as effectually to nullify the right of such inquiry. Recitals of this kind must be regarded like asseverations of good faith in a deed, which avail nothing if the instrument is shown to be fraudulent. The records of the domestic tribunals of England and some of the States, it is true, are held to import absolute verity as well in relation to jurisdictional as to other facts, in all collateral proceedings. Public policy and the dignity of the courts are supposed to require that no averment shall be admitted to contradict the record. But, as we have seen, that rule has no extra-territorial force.

It may be observed that no courts have more decidedly affirmed the doctrine that want of jurisdiction may be shown by proof to invalidate the judgments of the courts of other States, than have the courts of New Jersey. The subject was examined and the doctrine affirmed, after a careful re-

view of the cases, in the case of *Moulin* v. *Insurance Company*, in 4 Zabriskie,* and again in the same case in 1 Dutcher,† and in *Price* v. *Ward;*‡ and as lately as November, 1870, in the case of *Mackay et al.* v. *Gordon et al.*§ The judgment of Chief Justice Beasley in the last case is an able exposition of the law. It was a case similar to that of *D'Arcy* v. *Ketchum*, in 11 Howard, being a judgment rendered in New York under the statutes of that State, before referred to, against two persons, one of whom was not served with process. "Every independent government," says the chief justice, "is at liberty to prescribe its own methods of judicial process, and to declare by what forms parties shall be brought before its tribunals. But, in the exercise of this power, no government, if it desires extra-territorial recognition of its acts, can violate those rights which are universally esteemed fundamental and essential to society. Thus a judgment by the court of a State against a citizen of such State, in his absence, and without any notice, express or implied, would, it is presumed, be regarded in every external jurisdiction as absolutely void and unenforceable. Such would certainly be the case if such judgment was so rendered against the citizen of a foreign State."

On the whole, we think it clear that the jurisdiction of the court by which a judgment is rendered in any State may be questioned, in a collateral proceeding in another State, notwithstanding the provision of the fourth article of the Constitution and the law of 1790, and notwithstanding the averments contained in the record of the judgment itself.

This is decisive of the case; for, according to the findings of the jury, the justices of Monmouth County could not have had any jurisdiction to condemn the sloop in question. It is true she was seized in the waters of New Jersey; but the express finding is, that the seizure was not made within the limits of the county of Monmouth, and that no clams were raked within the county on that day. The authority

---

* Page 222.	† Page 57.
‡ 1 Dutcher, 225.	§ 34 New Jersey, 286.

to make the seizure and to entertain cognizance thereof is given by the ninth section of the act, as follows:

"It shall be the duty of all sheriffs and constables, and may be lawful for any other person or persons, to seize and secure any such canoe, flat, scow, boat, or other vessel as aforesaid, and immediately thereupon give information thereof to *two justices of the peace of the county where such seizure shall have been made*, who are hereby empowered and required to meet at such time and place as they shall appoint for the trial thereof, and hear and determine the same; and in case the same shall be condemned, it shall be sold by the order of and under the direction of the said justices, who, after deducting all legal costs and charges, shall pay one-half of the proceeds of said sale to the collector of the county in which such offence shall have been committed, and the other half to the person who shall have seized and prosecuted the same."

From this it appears that the seizure must be made in a county, and that the case can only be heard by justices of the county where it is made—"two justices of the peace of the county where such seizure shall have been made." The seizure in this case as specially found by the jury, was not made in Monmouth County; but the justices who tried the case were justices of that county. Consequently the justices had no jurisdiction, and the record had no validity.

It is argued that the seizure was continuous in its character, and became a seizure in Monmouth County when the sloop was carried into that county. This position is untenable. Suppose the seizure had been made in Cumberland County, in Delaware Bay, could the sloop have been carried around to Monmouth County and there condemned, on the ground that the seizure was continuous, and became finally a seizure in Monmouth County? This would hardly be contended. But it is said that the seizure was made within the State, off the county of Monmouth, and not within the limits of any county; and, hence, that Monmouth County was the first county in which the seizure took place. If this had been true (as it undoubtedly was), and the jury had so

found, still it would not have helped the case. The major proposition is not correct. A seizure is a single act, and not a continuous fact. Possession, which follows seizure, is continuous. It is the seizure which must be made within the county where the vessel is to be proceeded against and condemned. The case may have been a *casus omissus* in the law; it is certainly not included in it.

As this disposes of all the errors which have been assigned, the judgment must be

AFFIRMED.