COOPER v. BRAZELTON et al.

(Circuit Court of Appeals, Fifth Circuit. March 7, 1905.)

No. 1,358.

**1. CORPORATIONS—ACTIONS—FOREIGN CORPORATIONS—SERVICE OF PROCESS— AGENTS.**

A president of a bank to which borrowing members of a foreign building and loan association were accustomed to pay dues and other charges to be forwarded to the home office of the association, but which was without authority from the association to make collections and remittances, and merely performed the work in the course of a general banking business, was not, after the association was in course of liquidation and the bank was transacting no business for it, the agent of the association for the purposes of service of process.

[Ed. Note.—Service of process on foreign corporations, see note to In re Eggert, 43 C. C. A. 3.]

**2. JUDGMENTS—FOREIGN JUDGMENTS—JURISDICTIONAL RECITALS—CONTRADICTION.**

Neither the constitutional provision requiring full faith and credit to be given in each state to the public acts, records, and judicial proceedings of every other state, nor the act of Congress passed in pursuance thereof, prevents inquiry in the courts of one state into the jurisdiction of a court of another state by which a judgment was rendered; but the record of such judgment may be contradicted as to the facts necessary to give the court jurisdiction, and if it be shown that such facts did not exist either as to the subject-matter or the person or thing involved in the litigation, the record of the judgment will be a nullity, although it may recite that such facts did exist.

3. SAME—ATTACK IN FEDERAL COURT.

The jurisdiction of a state court to render a judgment offered in evidence in a federal court sitting in the same state is open to attack.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, § 1505.]

4. BUILDING AND LOAN ASSOCIATIONS—STOCKHOLDERS AND BORROWERS—CONSTRUCTION OF CONTRACT.

Defendant subscribed for shares of stock in a building and loan association, to be paid in monthly installments, and received a certificate therefor. About a month after making this subscription he borrowed a sum of money from the association, giving a bond bearing 10 per cent. interest per annum, payable monthly in advance, to evidence the indebtedness which was secured by an assignment of the stock. *Held*, that the transactions were independent and distinct, and, in the absence of fraud or other vitiating circumstance, were to be performed according to their terms, and defendant could not complain of the application of payments made by him to his liability on his stock dues in accordance with the terms of his subscription and the loan contract, and contend that they should be credited on the bond.

5. USURY—COLORABLE TRANSACTIONS.

A transaction in the form of a fictitious building contract, by which a house was to be constructed for $1,200, but which was in fact a loan of $800, made in consideration of a note for $1,200, payable in 60 monthly installments, and providing that installments not paid when due should bear interest at 10 per cent. from the date due until paid, and that, if any installment became due and remained unpaid, the whole sum remaining should become due and payable—was usurious.

6. ESTOPPEL—INDUCEMENT TO PURCHASE INCUMBRANCES—DENIAL OF VALIDITY OF SAME.

Where borrowers, in applying for a loan to pay off incumbrances, induced the lender to purchase such incumbrances in reliance on representations as to their existence, they could not, as against the lender, claim that the incumbrances arose out of a usurious transaction, nor could they deny that the amount which they represented as due. was actually due thereon.

7. HOMESTEAD—LIENS—VALIDITY.

Under Const. Tex. art. 16, § 50, providing that no mortgage or lien on a homestead shall be held valid except such as is created for purchase money and improvements a purported mechanic's lien on a homestead, given simply to secure a usurious loan of money, is void, notwithstanding recitals therein, stating that it is given for labor and material advanced by the lender for improvements on the borrower's homestead.

8. ESTOPPEL—NOTICE OF DEFECTS.

Const. Tex. art. 16, § 50, prohibits the creation of liens on a homestead other than for purchase money and improvements. A borrower, in applying for a loan on his homestead, in order to pay off a mechanic's lien, stated that the house on his homestead premises was erected in 1893. The contract which was supposed to create the lien recited that it was for the erection of the house, and was not executed until 1894. The lender examined this contract before making the loan or purchasing the lien. *Held*, that the lender was put on notice of the invalidity of the lien, and the borrower was not estopped to assert the same.

9. HOMESTEAD—LIENS FOR IMPROVEMENTS—ATTORNEY'S FEES.

Attorney's fees provided for in a note, secured by a mechanic's lien, for improvements on a homestead, cannot be enforced against the homestead.

Appeal from the Circuit Court of the United States for the Western District of Texas.

Le Roy A. Smith and Drew Pruit, for appellant.
John B. Scarborough, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and MEEK, District Judge.

MEEK, District Judge. Lawrence Cooper, receiver of the Southern Building & Loan Association, filed suit against J. S. Brazelton and his wife, Laura P. Brazelton, in the United States Circuit Court for the Western District of Texas, and asked a decree for certain indebtedness alleged to be due him as such receiver, and evidenced by a certain bond; and to establish and foreclose two certain mechanics' liens alleged to exist upon the homestead of the defendants, and given to secure an original indebtedness, now represented by the bond; also to establish and foreclose a lien upon certain shares of stock of the Southern Building & Loan Association, given as collateral security for the payment of the bond. The defendants answered, and, without setting forth their allegations and defenses in extenso, they may be summarized as follows: (1) By way of special answer a plea of res adjudicata was interposed; (2) payment was alleged; (3) that the contract of indebtedness was affected with usury; (4) that one of the mechanics' liens sought to be established and foreclosed on their homestead was invalid. The facts and the contentions of the respective parties will be stated in the course of the opinion.

The appellees' plea of res adjudicata interposed as an answer to appellant's cause of action stands at the threshold of the case, and should be first considered. The former adjudication relied upon by the appellees was the result of a suit instituted by them, as plaintiffs in the district court of McLennan county, Tex., against several defendants, one of the number being the Southern Association. The judgment in that case decreed the indebtedness represented by the bond which is the basis of this action to be fully paid and discharged. It also canceled, annulled, and avoided the liens sought by appellant's bill to be foreclosed. The Southern Association was a foreign corporation, organized under the laws and domiciled in the state of Alabama. Jurisdiction is alleged to have been acquired and exercised in this suit by virtue of the service of citation upon it by serving one W. W. Seely as its agent. The judgment recites that the Southern Association "had been duly and legally cited" in the action. No appearance or answer was made by the association, and judgment was taken against it by default.

The jurisdiction of the district court of McLennan county to render this judgment depended upon whether or not Seely was the agent of the association at the time of service, and the fact of his agency is controverted. W. W. Seely was the proprietor and president of the Waco State Bank. The Southern Association had a membership at Waco; that is, parties resided there who were shareholders in and borrowers from the association. At the instance and for the benefit of these the Waco State Bank received and remitted to the association at Huntsville, Ala., dues and other collections made from them. Whoever happened to be at the collection window in the bank received the money and receipted for the amount in a passbook held by the member. No authority had been given

by the association to Seely or the bank to make these collections and remittances, nor had instructions been given as to the handling of them. The work seems to have been performed simply in the course of a general banking business. But even this course of business had ceased prior to the time of the institution of this suit in the state court. The affairs and property of the association had theretofore been placed in the hands of appellant as receiver, and the association was not transacting any business of any character. Its officers and agents had been enjoined from representing it, or taking any action whatsoever with relation to its affairs. We do not believe, under these circumstances, service on the association by service on Seely as its agent could be considered effective and valid service, sufficient to support the jurisdiction the district court assumed and exercised in this case.

In the course of the opinion in Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808, Chief Justice Fuller says:

"In Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897, a leading case in this court, it was ruled that 'neither the constitutional provision that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, nor the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered'; that 'the record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction; and, if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist'; and that 'want of jurisdiction may be shown either as to the subject-matter of the person, or, in proceedings in rem, as to the thing.'"

It is also a well-settled rule that the question of jurisdiction is open to inquiry when the judgment of a court of the state comes under consideration in a court of the United States sitting in the same state. Cooper v. Newell, 173 U. S. 555, 19 Sup. Ct. 506, 43 L. Ed. 808; Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. It is shown to our satisfaction that jurisdiction was not vested in the district court of McLennan county, Tex., to render this judgment against the Southern Association, and its action will therefore be considered as a nullity.

In February, 1896, J. S. Brazelton subscribed for 24 shares, of the par value of $50 each, of the capital stock of the Southern Association, for which a certificate was issued to him. These shares were to be paid for in monthly installments of 35 cents per share. Subsequently, in March, 1896, he and his wife made written application to the association to purchase and carry for them certain outstanding indebtedness against their homestead, and represented such indebtedness to be secured by mechanics' liens. The association advanced $1,000 for this purpose, and purchased such outstanding indebtedness and the liens securing same. In consideration of the advance of $1,000 and the renewal of the indebtedness, the appellees gave their bond to the association in terms and figures as follows:

"$1000.00.                                 Waco, Texas, March 28, 1896.

"Eight years after date we promise to pay to the Southern Building and Loan Association, a corporation organized under the laws of the State of

Alabama, the sum of one thousand ($1,000.00) dollars, with interest thereon, at the rate of ten per cent per annum, from date, payable monthly, in advance, on the first day of each month; and in event default is made in the payment of this obligation when the same becomes payable, and it is placed in the hands of an attorney for collection, then an additional amount of ten per cent on the principal and interest of this obligation shall be added to same as attorney's fees; and we transfer and assign as collateral security certificate No. 12,359 in said association, issued to us for 24 shares.

"And it is hereby stipulated and agreed that in the event we fail to pay said interest on said indebtedness, or the instalments on said shares for a period of three months, then the said entire indebtedness shall become due and payable, and said shares shall become forfeited to said association, under its by-laws.

"It is expressly understood that this obligation is given as a renewal of certain indebtedness owing by us to said association, and secured by two mechanic's liens on certain real estate described in the deed of trust executed as collateral hereto.

"Witness our hands this the 28th day of March, 1896.

                                        "J. S. Brazelton.
                                        "Laura P. Brazelton."

In accordance with its provisions, the shares of stock were transferred and assigned to the association as collateral security for the payment of the bond. Subsequent to his purchase from it of the shares of stock and the making of this bond, Brazelton paid to the Southern Association the sum of $1,304.45. This amount was applied by the association to payments of stock dues and to payments of interest and premium charges on the advance of $1,000 made for him. Appellees contend that they are entitled to credit on their bond of the amount paid by Brazelton on his stock subscription; that Brazelton did not desire to become a bona fide shareholder in the association, and was compelled to subscribe for shares in order to secure a part of the loan or advance made on his behalf. This contention cannot be upheld. The subscription for the stock by Brazelton and the subsequent loan or advance of money in his behalf were two separate and independent transactions, and he cannot be heard to deny the validity or effectiveness of legal contracts entered into by him. It is neither alleged nor attempted to be shown that any fraud was perpetrated upon him, or that he is non compos mentis, and therefore must be held to a performance of his contracts. Andrus v. People's Loan & Savings Association, 94 Fed. 575, 36 C. C. A. 336; Manship v. New South Building & Loan Association (C. C.) 110 Fed. 854; Association v. Abbott, 85 Tex. 224, 20 S. W. 118. Only in event the subscription for shares of stock by Brazelton and the loan or advance to him and his wife were considered as one transaction, resulting in the amounts paid in stock subscriptions being applied as payments on the advance or loan, could the transaction be held to be usurious, as the bond for the advance or loan simply calls for 10 per cent. interest, payable monthly in advance, from the date of the making until the same is satisfied.

Six hundred of the $1,000 advanced at the request of the appellees was used by the Southern Association in the purchase of an indebtedness and purported mechanic's lien held by the Texas Building & Loan Association of Corsicana, Tex., against the homestead of the appellees. It is the contention of the appellees that the transaction by which they became indebted to the Texas Association was tainted with usury, and

that their obligation in the hands of the appellant is affected with this vice. The facts of this transaction, as disclosed by the record, are as follows: In April, 1893, J. S. Brazelton and his wife, Laura P. Brazelton, purchased certain lots in the city of Waco for a homestead. A house was erected on these lots during the month of December, 1893, which was occupied as a residence by them on January 8, 1894. Subsequent to the erection of the house and the occupancy of the premises as a homestead, and on January 18, 1894, Brazelton and his wife, for the purpose of recouping his business for money withdrawn from it in making payments for the building, borrowed $800 from the Texas Association. For and in consideration of this loan they gave their note to this association for $1,200, in terms and figures, as follows:

"Homestead Lien. $1,200.00.            Corsicana, Texas, January 18, 1894.

"For value received we promise to pay to the Texas Building & Loan Association, or order, at their office, in Corsicana, Texas, the sum of twelve hundred and no/100 dollars, payable in 60 monthly instalments of twenty and no/100 dollars each, the first instalment to be paid on the 18th day of February, 1894, and one instalment on the 18th day of each succeeding month thereafter until the whole sum is paid, conditioned that if any instalment becomes due and remains unpaid for ten days thereafter, then, at the option of the holder of this note, the whole sum remaining unpaid shall become immediately due and payable; instalments not paid when due shall in any and all events bear interest at the rate of ten per cent per annum from date due until paid; conditioned also, that we will pay ten per cent additional on the amount then due as attorney's fee if this note or any part of it is collected by suit. This note is given for labor and material advanced us by the Texas Building and Loan Association for the improvement of our homestead premises, and to secure the payment hereof we have this day executed to the said Texas Building and Loan Association a lien on said homestead premises superior to the homestead exemptions, which premises are described as follows, to-wit: All that certain lot of land being 100 x 165 feet in the city of Waco, McLennan Co., Texas, reference being made to said lien of even date herewith for more particular description.

"[Signed]                                    J. S. Brazelton.
                                         "Laura P. Brazelton."

At the same time a building contract was entered into between Brazelton and his wife and the Texas Association by the terms of which a purported mechanic's lien was sought to be fixed on their homestead to secure this loan. The building contract also purported to provide for the erection of a house, which had in fact theretofore been erected on the lots purchased by the Brazeltons, and was at that time occupied by them as a home. It also recited that the Texas Association was to provide all material for the erection of the house, and was to perform all labor in its construction, and was to receive in consideration therefor the sum of $1,200. This transaction was in fact a loan by the Texas Association to the Brazeltons of $800 for and in consideration of which it received their note for $1,200, 50 per cent. more than the actual principal of the loan. It was provided that installments not paid when due should bear interest at the rate of 10 per cent. per annum from date due until paid; also that, if any installment became due and remained unpaid, at the option of the holder of the note, the whole sum remaining should become immediately due and payable. This transaction was certainly usurious. The makers of the note could set up and take advantage of its usurious character as against the Texas Associa-

135 F.—31

tion, but are they in position to urge the defense of usury against the, appellant, the present holder? The Brazeltons made written application to the Southern Association for an advance or loan of $1,000, with a part of which to take up the indebtedness and to purchase the lien held by the Texas Association. Certain questions and answers formed a part of the application, and among others are the following:

"(1) Main building—what material? Frame. When built? 1893." "(26) Is this your homestead? Yes. If so, how long have you lived on these premises? 18 months." "(30) Are there any unrecorded deeds, mortgages, judgments, mechanic's lien, or incumbrances on this property? Yes. If so, for what amount? $600.00. In favor of whom? Texas Building & Loan Association."

As a part of and appended to the application for the loan is the following affidavit:

"State of Texas, McLennan County. J. S. Brazelton and wife, Laura P. Brazelton, being duly sworn, depose and say that they made, and have read the above statements; that they were made for the sole purpose of inducing the Southern Building & Loan Association to purchase the indebtedness and liens above mentioned, and that the statements herein made are true.
"Witness our hands at Waco, Texas, this the 16th day of March, 1896.
"J. S. Brazelton.
"Laura P. Brazelton."

The Southern Association made examination of the building contract entered into between the Brazeltons and the Texas Association and of the note for $1,200 given the latter, and believing the recitations contained in the contract and note, and believing and relying on the representations that there were $600 still due and owing upon the mechanic's lien contract and note, advanced this sum for the defendants to the Texas Association, thus purchasing the note and lien. The Brazeltons, parties to this usurious contract, by their affirmative representations made to the Southern Association, induced it to rely upon the validity of the contract, and have in conscience estopped themselves from taking advantage of the usury therein. Webb on Usury, § 439; Jones on Mortgages (4th Ed.) vol. 1, § 631; Pomeroy on Equity, vol. 2, § 804. They are also estopped from denying that there were $600 still due and owing upon the mechanic's lien contract and note at the time of its purchase by the Southern Association, because of their representations to that effect.

It is also contended by appellees that the purported mechanic's lien given to secure the debt to the Texas Association is void and of no effect, and should be so declared and held. The Constitution of the state of Texas provides that "no mortgage, trust deed or other lien on a homestead shall ever be held to be valid except for the purchase money therefor and improvements made thereon, * * * whether said mortgage or trust deed or other lien shall have been created by the husband alone, or together with his wife." Article 16, § 50. The purported mechanic's lien on their homestead given by Brazelton and his wife to the Texas Association was not given for improvements made thereon, but for what was in fact simply a usurious loan of money. Chief Justice Stayton, in Texas Land & Loan Company v. Blalock, 76 Tex. 87, 13 S. W. 13, says:

"The Constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing contrary to the fact. To hold otherwise would practically abrogate the Constitution. If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead contrary to the fact will enable parties to evade the law and incumber homesteads with liens forbidden by the Constitution. Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Pellat v. Decker, 72 Tex. 581, 10 S. W. 696; Kempner v. Comer, 73 Tex. 203, 11 S. W. 194."

The pretended mechanic's lien is therefore void, notwithstanding the recitations and representations, which, if in fact true, would render it a valid lien. But appellant says that, even if this lien was void between the original parties, the Southern Association was induced by appellees to purchase it in good faith, and for a valuable consideration, and they cannot, therefore, be heard to contend that it is invalid. While the recitals in the mechanic's lien contract between these parties and the Texas Association were false, and calculated to mislead, yet in the written application for the loan or advance of $1,000 the Brazeltons, in response to the question put to them by the association, revealed the fact that the house was erected on the homestead in 1893. The purported contract for its erection entered into with the Texas Association, and by which it was sought to fix the mechanic's lien, was not executed until January 18, 1894. This contract came into the possession of the Southern association, and was examined by it before the debt and the lien securing it were purchased. So that the association was put on notice that the lien was sought to be fixed on the homestead at a date when, under the law, it could not be so fixed. We therefore deem it unnecessary to further discuss complainant's contention of estoppel.

In March, 1896, the Brazeltons, being desirous of improving their homestead by the erection of an addition thereto, entered into a contract with Alex McKechney, contractor, to make the improvements. In consideration for furnishing material, supplying labor, and completing the improvements, they gave him their note for $400, in terms and figures as follows:

"$400.00.                                Waco, Texas, March 27th, 1896.
    "Sixty days after date, for value received, we promise to pay to Alex McKechney or order, Four Hundred Dollars, at Waco, Texas. To bear interest at the rate of 10 per cent per annum from maturity. And further hereby agree that if said note is not paid when due, to pay all costs necessary for collection, including ten per cent for attorney's fees. Secured by mechanic's lien on our homestead.
    "Due ———. No. ———.                        J. S. Brazelton.
                                              "Laura P. Brazelton."

A mechanic's lien was duly given to secure this note. Upon application of the Brazeltons, the note and lien were purchased by the Southern Association. The lien was held by it as security for the payment of the bond of $1,000 executed by the Brazeltons in extension and renewal of their indebtedness. No contention is made that this is not a valid and effective lien. It is contended, however, that the lien cannot

be held to secure the payment of the attorney's fee provided for in the note. On the authority of the case of Harn v. Building Association, 95 Tex. 79, 65 S. W. 176, we so hold.

The views herein expressed being held by a majority of the court, the decree rendered in the court below will be reversed, and a decree will be entered awarding appellant judgment for the principal sum of the bond, with interest thereon at the rate of 10 per cent. per annum from September 28, 1902, and attorney's fees as provided in the bond; decreeing the establishment and foreclosure of the mechanic's lien originally given to McKechney for $400 and interest upon the premises described; and also decreeing the establishment and foreclosure of the lien on the shares of stock given as collateral security to the bond. Costs against appellees.