## CONSOLIDATED IRON & STEEL CO. v. MAUMEE IRON & STEEL CO.

(Circuit Court of Appeals, Eighth Circuit. October 26, 1922.)

No. 5859.

1. **Judgment ⬥906—Want of jurisdiction good defense in action on judgment.**

In an action on a judgment, it is an available and complete defense that the court which rendered the judgment was without jurisdiction.

2. **Corporations ⬥673—Foreign corporation held not doing business in state.**

Evidence *held* insufficient to show that a foreign corporation was doing business in Ohio, where it had not complied with the requirements of the statute to authorize it to do such business, and had no office, managing agent, or property in the state, though its president resided there and from time to time made advances, which he sent from there to the corporation in its home state.

3. **Corporations ⬥668(5)—President of corporation considered as managing agent for service of process.**

Under Gen. Code Ohio, § 11288, authorizing service of summons against a corporation on its president, and section 11290, providing that service on a foreign corporation having a managing agent in the state may be made on such agent, where a foreign corporation is doing business in the state, but has no managing agent there, being represented by its president, who resides there, he may be considered managing agent for the purpose of making service.

4. **Corporations ⬥675—Default judgment against foreign corporation held void for want of valid service.**

Where the president of a foreign corporation was interested with the plaintiff in an action against the corporation, both personally and as stockholder in the plaintiff corporation, valid service of summons in the action could not be made on him, and default judgment, entered on such service, without notice to other officers and stockholders, *held* void for want of jurisdiction.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action at law by the Maumee Iron & Steel Company against the Consolidated Iron & Steel Company. Judgment for plaintiff, and defendant brings error. Reversed.

Carl H. Gilbert, of Santa Fé, N. M. (A. B. Renehan, of Santa Fé, N. M., and W. A. Gillenwater, of Clovis, N. M., on the brief), for plaintiff in error.

Harold C. Perry, of Santa Fé, N. M. (Francis C. Wilson, of Santa Fé, N. M.; and Ritter & Hutchens, of Toledo, Ohio, on the brief), for defendant in error.

Before LEWIS and KENYON, Circuit Judges, and YOUMANS, District Judge.

LEWIS, Circuit Judge. In April, 1919, a court of Common Pleas of the State of Ohio rendered on default a personal judgment against appellant, a New Mexico corporation, and in favor of appellee, an Ohio corporation. From the judgment roll it appears that the recovery was for money advanced to appellant by the Yesbera Manufacturing Company of Ohio, account for which was assigned to appellee,

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

showing a large number of sums advanced between May 8, 1911, and September 15, 1913.  The service of summons was this:

"State of Ohio, Lucas County—ss.

"Received this writ Jan. 15, 1919, and pursuant to its command, I summoned on the 17th day of January, 1919, the within named defendant, the Consolidated Iron and Steel Company by delivering to George Yesbera, President of said Company, a true and certified copy of this writ with endorsements thereon.                          John F. Mathias, Sheriff,
                                              "By C. D. Whitaker, Deputy."

[1] The appellee brought this action on that judgment, and appellant, first by demurrer and then by plea and answer, unsuccessfully challenged the validity of the judgment of the Ohio court on the ground that there was no jurisdiction over the person of appellant in that proceeding, hence that judgment, it contended, was void, and this action bottomed upon it could not be maintained.  The attack on the ground stated was available and constituted a complete defense, if sustained.  Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897; Fauntleroy v. Lum, 210 U. S. 230, 28 Sup. Ct. 641, 52 L. Ed. 1039; Bigelow v. Old Dominion Co., 225 U. S. 111, 32 Sup. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875; Toledo Ry. & L. Co. v. Hill, 244 U. S. 49, 37 Sup. Ct. 591, 61 L. Ed. 982; Cooper v. Brazelton, 135 Fed. 476, 68 C. C. A. 188.

The contention of appellant is two-fold, first, that it was not constructively within the State of Ohio when service of summons was made,—not doing business there, therefore there was no process or method of procedure by which the Ohio court could bring appellant within and subject to its jurisdiction and power, and secondly, conceding its constructive presence, the service of summons was not good for two reasons, 1, the service was not on the corporation's representative named in the State statute for that purpose, and, 2, the officer served was interested in obtaining the judgment in the State court and would indirectly share in the proceeds should it be collected.  The facts on which the contention must be determined are these:

Frank Yesbera, a resident of Toledo, Ohio, became interested in appellant and its mining operations in New Mexico in 1906, and at once began to advance money to it, and continued to do so until his death in January, 1917, for which he was to have an interest in stock.  He was made president and continued to be such until his death.  He also made a contract with appellant in 1906 to sell for it as its agent a large amount of its mortgage bonds, for a commission.  Nothing came of that, except he sold one bond in Boston.  He opened an office in Toledo and had the company's name put on the door.  Three meetings of the board of directors were held at that office in 1906 and 1907.  He opened an account for the company in a bank at Toledo, on which a few checks were drawn during 1907 to 1910.  The account was closed long before his death.  He carried on some correspondence for the company.  On his death his brother George Yesbera was elected president in his stead, and appointed administrator of Frank's estate, and he and the heirs of Frank, all of Toledo, for a short while advanced sufficient amounts to keep the assessment work going on the company's unpatented mining claims in New Mexico.  It was organized to mine,

reduce and dispose of all kinds of mineral deposits. All of its mineral lands were in New Mexico, and its business was to work and develop them as funds might be obtained. It did not apply for the right to carry on business in Ohio, as the statute of that State provided it might do. It had no property there, except a few pieces of office furniture. Neither did it appoint anyone as its managing agent in that State. In August, 1917, the administrator and heirs made a contract with one Collin by which they gave him an option to acquire the interests of Frank's estate and their interests, represented by the advancements they had made. George Yesbera testified that after that option was given he had nothing more to do with the company, that from the time of his appointment as administrator in the early part of 1917 he only gave attention to the interests of the estate in the company, that the company's office was moved from where it had been to another part of the city into a room occupied by others before Frank's death, that he only had a desk there and that he did not take charge of the affairs of the company but of the affairs of his brother Frank with the company, that the company had no funds in Toledo and no bank account there, and no business except with Frank's estate and heirs, and that the money which he and the other heirs sent to New Mexico was just made up between them. He had nothing to do with the company after the arrangement with Collin. Collin then advanced some money. Under the option contract with Collin the latter was to organize a new company to take over all interests of the Yesbera estate and heirs in appellant company. They were to have stock in the new company for their interests in appellant company. George Yesbera in the option contract with Collin bound himself to file and maintain suits in court for the purpose of enforcing any of the claims in favor of his brother's estate or the heirs, on written request of Collin. Pursuant to that agreement Collin organized appellee company, all interests of the Yesbera estate and heirs were assigned to it, and it obtained the judgment here sued on.

[2] 1. We do not believe that the voluntary unsolicited transmission of funds from one State to a foreign corporation in another State has any tendency to prove that the foreign corporation was doing business in the State from which the funds were sent. That aside, there is little left from which it could be found that appellant was transacting business in Ohio even during the lifetime of Frank Yesbera. He put the company's name on the door of an office which he occupied. But at that time he had a contract with the company to sell its bonds on commission, and personal interest, rather than the business of the company, probably moved him to make the display,—and he sold no bonds in Ohio. Besides, he later abandoned the office and sign and took desk room with others. He opened a bank account in Toledo in the company's name. This is the strongest circumstance. That may have been to aid in part the sending of money to New Mexico and the proof so indicates, though a few local checks were drawn against it. But that account had been closed and the appellant had no funds or other property in Ohio. The conclusion that appellant was doing business in Ohio prior to January, 1917, is weakly supported, if at all, and for

the year and a half thereafter until the summons was served the evidence shows, we think, that appellant did no business whatever there. The judgment roll shows no claim, inquiry or finding as to appellant's business in Ohio,—whether it was or was not doing business there, St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222, and the proof will not permit the inference that it had submitted itself to that jurisdiction and was constructively present when George Yesbera received the summons. St. L. S. W. Ry. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Phila. & R. Ry. v. McKibbin, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537.

[3] 2. The attempted service was made in accordance with Section 11288 of the Ohio General Code, reading in part thus: "A summons against a corporation may be served upon the president," etc. It is claimed that service can be made on a foreign corporation only in the manner pointed out by Section 11290, which reads: "When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon said agent." Appellant never had a managing agent in Ohio, and if the facts would support a finding that it was doing business there, in which it was represented by its president, we would be disposed to hold that under those circumstances the method pointed out by the latter section is either not exclusive, or, if so, that the company's chief executive officer in the State should be held to be the managing agent for purpose of service. Insurance Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569. Conley v. Mathieson Alkali Works, 190 U. S. 406, 411, 23 Sup. Ct. 728, 47 L. Ed. 1113. The construction of the two sections in that respect does not appear to have been definitely settled by the highest court of that State. Lively v. Picton, 218 Fed. 401, 134 C. C. A. 189; Beach v. Kerr Turbine Co. (D. C.) 243 Fed. 706; McCullough v. United Grocers Corp. (D. C.) 247 Fed. 880. See also Swarts v. Christie G. & S. Co. (C. C.) 166 Fed. 338.

[4] 3. George Yesbera was interested as a stockholder in appellee company at the time summons was served on him, not only as administrator but also personally on account of money which he and his brother's heirs had sent to the New Mexico company after his brother's death and before they made the contract with Collin. He had transferred to the plaintiff in the action in the Court of Common Pleas his claim and that of his late brother against the defendant there, appellant here, for money which they had advanced to the latter, including therewith the amount sued for; and in consideration had taken stock in appellee company. His interest in that controversy, both personally and in his representative capacity, was with the plaintiff in that action. He had bound himself in the contract with Collin to bring and maintain suit against appellant company on the claim on which judgment was obtained in the Ohio court, if Collin should request him to do so. When summons was served on him his duty to appellant company as its president was in antagonism to his obligation and duty to Collin and appellee; it was also in conflict with his official duty as administra-

tor· of his brother's estate, as well as with his personal interest.  He knew there was grave doubt whether the Statutes of Limitation in New Mexico did not bar a recovery of a large part of the advancements that had been made by his brother, and that a right to recover in behalf of his brother's estate was then being refuted.  The contract with Collin so recites.  There is also some intimation that only stock in the company could be claimed for all advancements.  Other officers and stockholders, largely interested, resided in New Mexico, but George Yesbera admits that he did not notify them, or anyone else interested, of the suit in the Court of Common Pleas and the attempted service of summons upon him.  On these facts the appellant says the service was void.  We think the point well taken.  9 Fletcher Cyc. Corp. Sec. 6034;  Tortat v. Hardin M. & M. Co. (C. C.) 111 Fed. 426;  King Tonopah M. Co. v. Lynch (D. C.) 232 Fed. 485, 496;  Mining Co. v. Powell, 30 Colo. 397, 70 Pac. 679;  People v. Feicke, 252 Ill. 414, 96 N. E. 1052;  Atwood v. Sault Ste. Marie Co., 148 Mich. 224, 111 N. W. 747, 118 Am. St. Rep. 576.

The court erred in not granting appellant's request, when the proof was all in, for an instructed verdict.

Reversed.