MANN, Judge
(concurring in part, dissenting in part).
A California man begets a California child by a California woman, is declared by a California court to be the child’s father and required by California law to support the child until he reaches twenty-one. The California man, then a young resident in a hospital, moves to Florida, where he practices medicine successfully. My brethren think that this absolves him of the duty to support the child after he becomes eighteen, a conclusion I could share if he had, as a Floridian, sired a Florida child by a Florida mother. A preference for the law of the forum which takes the single contact with Florida, the appellant’s voluntarily established residence here, and uses this to defeat the predominant interest of California in the matter cannot, in my view, be squared with comity, the Constitution or common sense.
As a pure choice-of-law matter, it is clear that California law would govern under any but the most chauvinistic theory of conflict of laws. I do not understand my brethren to dispute this. They err, I think, in assuming that because the appellee has established the decree as a Florida decree she is bound by all of the incidents of Florida law. I disagree. Though Congress probably has the power to allow O. M. to place a California writ in the hands of a Florida sheriff for execution, it has not done so, and any litigant who wishes to enforce a foreign judgment must first ask the Florida court to make it a Florida judgment.[1] What is adjudged, however, may depend upon foreign law. Of course she sought modification of the amount, and this is not unexpected. And of course the Florida court entered a Florida judgment. It would be anomalous if a Florida judge were to command all and singular the sheriffs of the State of California to enforce his judgments. Chapter 742 was written with Florida-dominated cases in mind, but is not inapposite to a multi-state case. The case is not one of statutory interpretation, but of the conflict of laws, if we must provide some pigeonhole into which to sort our thoughts. Viewed as a progression of simple steps my brother Pierce’s opinion has a certain logical consistency, but it ignores the central question.
If there were a conflict in this case between Florida’s interest and California’s we might have to heed the advice of Mr, *756 Justice Stone in Alaska Packers Association v. Industrial Accident Commission of California, 1935, 294 U.S. 532, at 547, 55 S.Ct. 518, 524, 79 L.Ed. 1044:
“The necessity is not any the less whether the statute and policy of the forum is set up as a defense to a suit brought under the foreign statute or the foreign statute is set up as a defense to a suit or proceedings under the local statute. In either case, the conflict is the same. In each, rights claimed under one statute prevail only by denying effect to the other. In both the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight.”
The fact that support decrees are subject to modification by the law of the state in which rendered has been used unwisely to suggest that they are not “final” and in turn that they are not entitled to full faith and credit. I find no case in which this matter has been adequately treated, but I think Mr. Justice Jackson’s concurring opinion in Barber v. Barber, 1944, 323 U.S. 77, at 87, 65 S.Ct. 137, 141, 89 L.Ed. 82, states the correct view:
“Neither the full faith and credit clause of the Constitution nor the Act of Congress implementing it says anything about final judgments or, for that matter, about any judgments. Both require that full faith and credit be given to ‘judicial proceedings’ without limitation as to finality. Upon recognition of the broad meaning of that term much may some day depend.
«* * *_
“Of course a judgment is entitled to faith and credit for just what it is, and no more. But its own terms constitute a determination by the rendering court as to what it is, and an enforcing court may not search the laws of the state to see whether the judgment terms are erroneous. Of course, if a judgment by its terms reserves power to modify or states conditions, a judgment entered upon it could appropriately make like reservations or conditions. No such appear in this judgment unless they are to be annexed to it by a study of the law of North Carolina. Any application for such relief should be addressed to the North Carolina court and not to the Tennessee court nor to this one. The purpose of the full faith and credit clause is to lengthen the arm of the state court and to eliminate state lines as a shelter from judicial proceedings. * *
Four distinguished scholars, Cheatham, Griswold, Reese and Rosenberg[2] follow the Jackson concurrence with this comment:
“Is not Mr. Justice Jackson correct? How can it be consistent with the mandate of full faith and credit for F-2 to refuse to enforce an F-l decree merely because it remains subject to modification at the hands of the F-l court? Such action certainly does not accord the judgment the same effect that it enjoys by ‘law or usage’ in F-l. But, on the other hand, if the F-2 court were to enforce the F-l decree without question, might it not thereby accord the judgment creditor a greater recovery than he would have obtained in F-l ? Such a result could be thought inconsistent with full faith and credit (see Abbot ‘Res Ju-dicata as a Federal Question,’ 25 Harv. L.Rev. 443 (1912)) and, in any event, might raise due process objections.
This case is a novel one. I have found no case in the country precisely in point. Bjorgo v. Bjorgo, Tex.1966, 402 S.W.2d 143, differs in two respects: in the first *757 place, there was no apparent recognition of the problem. It was not discussed either as a determination which had to be made on conflicts theory or in order to give full faith and credit. Secondly, the court there compelled a Texas domiciliary to pay until the child was eighteen although Kentucky, the original forum, would have allowed discontinuance at sixteen. It is arguable that Texas has ample power and interest to require Texans to “do the right thing” although this enlarges the obligation.
In Hughes v. Hughes, 1960, 12 A.D.2d 53, 208 N.Y.S.2d 308, a divided New York appellate court upheld a New York separation agreement to pay until age 21 which was alleged to be superseded by a judgment of divorce rendered in Texas, the wife’s new domicil, which required payment until age 16, later raised by statute to age 18. That decision illustrates the problem without touching the precise question here. The majority thought the contract not inconsistent with and not superseded by the Texas decree; the dissenting justices thought it abrogated by the Texas proceedings.
No Florida case touches the point. Certainly our prior opinion in this case, 180 So.2d 488, decided nothing more than the accessibility of our courts on this complaint. Harris v. Harris, Fla.App. 1962, 138 So.2d 376, supports Judge Pierce’s view of the prematurity of the allowance while the boy is in college, and with that portion of his opinion I concur. Platt, Durden and Boyle, supra, add no visible support to his opinion, nor do they draw objection from me. Cox v. Pow, Fla.App. 1966, 182 So.2d 31, enforced a Dominican judgment in a paternity action to the same extent originally ordered, there being no apparent difference in duration. Sackler v. Sackler, Fla. 1950, 47 So.2d 292, recognizes the obligation of Florida courts to honor foreign alimony decrees on the basis of comity, but asserts that it is “generally conceded * * * that a decree for future installments of alimony not yet due is not, as to such installments, enforceable under the requirements of the ‘full faith and credit’ clause of the Federal Constitution, Art. 4, Sec. 1, because the decree as to such future installments is subject to change by the court rendering it * * 47 So.2d at 294. Since the decree was there enforced on a comity theory there is no denial of full faith and credit and the reference to the federal constitutional mandate is dictum.
Before us is a matter on which the California legislature, and a California court, having predominant concern for the status of these parties in this matter, have determined that a support obligation continues until age twenty-one. The California judgment should be respected in the courts of Florida, on any principle of the conflict of laws other than blind preference for the law of the forum as well as on the constitutional mandate of full faith and credit. U.S.Const. Art. IV, § 1. It is true that the plaintiff is allowed to proceed procedurally under the Florida bastardy act, Fla.Stat. c. 742 (1969), F.S.A., but her substantive rights are governed by California law. She proceeds under chapter 742 to effectuate a right created under California law exactly as the plaintiff in Lopez v. Avery, Fla. 1953, 66 So.2d 689, proceeded under then Chapter 65 to prove a claim adjudicated in Missouri. That opinion preserves the ambiguity about recognition of modifiable foreign decrees which underlies and perpetuates the myth that they are not “final” in a full-faith-and-credit sense, but I would accept completely and follow willingly what Mr. Justice Sebring said there: “What Missouri could do by way of making new provisions for support payments, Florida may also do; for the decree has no constitutional claim to a more conclusive or final effect in the state of the forum than it has in the jurisdiction where rendered.” 66 So.2d at 693. I think that the Florida court must do no more and no less than the California court must do. Either must consider and act on a claim for more money from the man who then earned little and now earns enough, and either court must consider that claim without *758 depriving plaintiff of her right to financial help until the child is twenty-one.
I acknowledge that the common law afforded no such remedy, and that Fla.Stat. § 742.041, F.S.A. goes so far as to prescribe a schedule of support payments applicable unless the trial judge adjudges a lower or higher amount appropriate. That section provides no normal allowance after the eighteenth birthday. But the entire chapter shows clearly that the action for support is not contrary to Florida’s public policy. This being true, the question of duration of the obligation is referable to California law.[3]
I would hold that the courts of Florida, proceeding under Chapter 742 to recognize a filiation decree of another state, must accord to it such “full faith and credit * * * as [it has] by law or usage in the courts of such State, Territory or Possession from which [it is] taken.” 28 U.S.C. § 1738.

. Lynde v. Lynde, 1901, 181 U.S. 183, 21 S.Ct. 555, 45 L.Ed. 810; McElmoyle for Use of Bailey v. Cohen, 1839, 13 Pet. (38 U.S.) 312, 10 L.Ed. 177; Thompson v. Whitman, 1874, 18 Wall. (85 U.S.) 457, 21 L.Ed. 897.

. Cases and Materials on Conflict of Laws 349 (5th ed. 1964).

. See also annotations, 41 A.L.R. 1419, 157 A.L.R. 170; Sooles, Enforcement of Foreign “Non-Final” Alimony and Support Orders, 1953, 53 Col.L.Rev. 817; Leñar, American Conflicts Law, §§ 84, 249 (Rev. ed. 1968) ; Ehrenzweig, A Counter-Revolution in Conflict Law?— From Beale to Cavers, 1966, 80 Harv.L. Rev. 377; Cheatham and Reese, Choice of the Applicable Law, 1952, 52 Col.L. Rev. 959.